Alex R. Straus (SBN 312366)
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN, PLLC**
280 S. Beverly Drive, PH Suite
Beverly Hills, CA 90212
Telephone:      (866) 252-0878
Facsimile:      (310) 496-3176
astraus@milberg.com

*Attorney for Plaintiffs*

*[Additional Counsel Listed on Signature Page]*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN JOSE DIVISION

| | |
|---|---|
| ARI NACHISON and SHANNA NACHISON, on behalf of themselves and all others similarly situated,<br><br>                              Plaintiffs,<br><br>v.<br><br>AMERICAN AIRLINES, INC.,<br><br>                              Defendant. | Case No. 5:24-cv-530<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED**<br><br>1.  Breach of Contract<br>2.  Unjust Enrichment |

## CLASS ACTION COMPLAINT

Plaintiffs Ari Nachison and Shanna Nachison bring this action on behalf of themselves and all others similarly situated against Defendant American Airlines, Inc. ("AA"). Plaintiffs' allegations are based upon personal knowledge and belief as to their own acts, upon the investigation of their counsel, and, where specifically stated, upon information and belief.

**INTRODUCTION**

1.     Plaintiffs bring this action individually and on behalf of a proposed class of similarly situated members of AA's AAdvantage program. This action arises out of AA's wrongful and unilateral termination of AAdvantage program accounts, resulting in the loss of airline miles benefits that had been accrued based on previous purchases, and which carried monetary value.

**PARTIES**

2.     Plaintiff Ari Nachison is a resident and citizen of Los Gatos (Santa Cruz County), California. On or about February 10, 2020, Plaintiff Ari Nachison had his AAdvantage account unilaterally terminated by AA and was forced to forfeit approximately 564,463 airline lawfully accrued award miles, including award miles already spent for upcoming flights.

3.     Plaintiff Shanna Nachison is a resident and citizen of Los Gatos (Santa Cruz County), California. On or about January 30, 2020, Plaintiff Shanna Nachison had her AAdvantage account unilaterally terminated by AA and was forced to forfeit approximately 550,664 lawfully accrued airline award miles.

4.     Defendant American Airlines, Inc. is a Delaware corporation, with its principal place of business in Fort Worth, Texas. Accordingly, for jurisdictional purposes, Defendant American Airlines, Inc. is a citizen of the States of Delaware and Texas.

**JURISDICTION AND VENUE**

5.     This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d). The aggregated claims of the individual class members exceed the sum or value of $5,000,000.00, exclusive of interest and costs; there are more than 100 putative class members; and at least one putative class member is from a state different from AA.  The Court also has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

6.     This Court has personal jurisdiction over AA because it conducts substantial business in this District and because AA is registered to do business in California. Plaintiffs used miles in their AAdvantage accounts for flights departing from and arriving at airports in this District and, during relevant times, AA maintained a base in this District located at the San Francisco International Airport.

CLASS ACTION COMPLAINT

7.      Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this District. Venue is also proper in this District under 18 U.S.C. § 1965 because AA transacts its affairs in this District and the ends of justice require it.

## INTRADISTRICT ASSIGNMENT

8.      Assignment to the San Jose Division is proper under Civil Local Rules 3-2(c) and 3-2(e) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in Santa Clara County.[1]

## GENERAL FACTUAL ALLEGATIONS

*AAdvantage Program*

9.      Defendant AA is one of the world's largest airlines and is the largest airline in the United States.[2] It provides air travel to passengers in the United States both domestically and internationally.

10.      On May 1, 1981, AA launched a frequent flyer reward program called the AAdvantage program ("AAdvantage") to encourage customer loyalty.[3] In 2021, AA boasted that AAdvantage included 115 million members.[4]

11.      AAdvantage members earn "miles" which can then be redeemed for various program benefits, including for purchasing flights, flight upgrades, car rentals, hotels, and other products.[5]

12.      Approximately 7% of AA's 2022 total revenue from passenger miles flown were from award travel.[6]

13.      AAdvantage members can purchase "miles" from AA directly.[7]  As of January 22, 2024, AA was selling 100,000 miles for $2,821.88:

---

[1] Plaintiffs currently reside in Santa Cruz County, California, which also results in assignment to the San Jose Division. Plaintiffs resided in San Jose, Santa Clara County, California at the times their AAdvantage accounts were wrongfully terminated.
[2] https://www.flightradar24.com/blog/largest-airlines (last accessed Jan. 24, 2024).
[3] https://news.aa.com/news/news-details/2021/AAdvantage-Celebrates-40-Years-of-Loyalty-Innovation-AADV-04/default.aspx (last accessed Jan. 24, 2024).
[4] *Id.*
[5] https://www.aa.com/i18n/AAdvantage-program/AAdvantage-program.jsp (last accessed Jan. 24, 2024).
[6] https://americanairlines.gcs-web.com/node/41211/html, at p. 10 (last accessed Jan. 24, 2024).

CLASS ACTION COMPLAINT

| Total miles | Total cost |
|---|---|
| **100,000** | **$2,821.88** |
| Includes 25% discount | Includes taxes, fees, and discounts |

14.     AAdvantage members can also earn "miles" by flying with AA or through various qualifying events through one of AA's partners, such as car rentals, dining, or hotel stays.[8]

15.     One of the most significant ways an AAdvantage member could earn miles is through obtaining and using an AA branded credit card.[9]

***AAdvantage Branding Partnerships and Credit Card Promotions***

16.     Citibank ("Citi") and Barclays are co-branding partners with AA, issuing several credit card products under the AA brand.

17.     Citi has issued several credit card products under the AA brand including, but not limited to, "American Airlines AAdvantage® MileUp® Mastercard®," "Citi®/AAdvantage® Platinum Select® Mastercard®," "Citi®/AAdvantage® Executive Mastercard®," and "CitiBusiness®/AAdvantage® Platinum Select® Mastercard®" (collectively, "Citi-AAdvantage credit cards").[10]

18.     Barclays has issued several credit card products under the AA brand including, but not limited to, "AAdvantage® Aviator® World Elite Silver Mastercard®," "AAdvantage® Aviator® World Elite Red Mastercard®," "AAdvantage® Aviator® World Elite Blue

---

[7] https://www.aa.com/AAdvantage-program/buy-gift-transfer/en_US/home/buy (last accessed Jan. 24, 2024).
[8] https://www.aa.com/i18n/AAdvantage-program/miles/earn/earn-miles.jsp (last accessed Jan. 24, 2024).
[9] https://www.aa.com/i18n/AAdvantage-program/miles/partners/credit-card/AAdvantage-credit-cards.jsp (last accessed Jan. 24, 2024).
[10] *Id.*

CLASS ACTION COMPLAINT

Mastercard®," "AAdvantage® Aviator® World Elite Mastercard®," and "AAdvantage® Aviator® World Elite Business Mastercard®" (collectively, "Barclays-AAdvantage credit cards").[11]

19.    Customers can earn miles by using the Citi-AAdvantage credit cards on everyday purchases and by earning Enrollment Bonuses when they enter into a Citi-AAdvantage credit card agreement. For example, Citi offers 50,000 AAdvantage bonus miles after $2,500 in purchases within the first three months of opening an account for the Citi® / AAdvantage® Platinum Select® Mastercard®.[12]

20.    Customers can earn miles by using the Barclays-AAdvantage credit cards on everyday purchases and by earning Enrollment Bonuses when they enter into a Barclays-AAdvantage credit card agreement. For example, Barclays offers 60,000 AAdvantage bonus miles after making your first purchase and paying the $99 annual fee within the first three months of opening an account for the AAdvantage® Aviator® World Elite Red Mastercard®.[13]

21.    Citi, Barclays, and AA earn large profits through these enrollment bonuses.

22.    Citi and Barclays benefit from the Citi-AAdvantage credit cards and Barclays-AAdvantage credit cards because, at minimum, they earn fees on all transactions. Citi and Barclays also can earn money through interest, balance transfer fees, late fees, annual fees, and any other fees which may be incurred.

23.    AA benefits from the Citi-AAdvantage credit cards and Barclays-AAdvantage credit cards by selling miles to Citi and Barclays. These sales are a significant source of revenue for AA, according to its Form 10-K filed with the SEC for 2022: [14]

---

[11]    https://creditcards.aa.com/barclay-credit-card-aviator-american-airlines-aadvantage    (last access Jan. 22, 2024).

[12]    https://creditcards.aa.com/citi-platinum-card-american-airlines-wand/?utm_medium=referral&utm_source=aa&utm_campaign=ccpage (last accessed Jan. 24, 2024).

[13]    https://cards.barclaycardus.com/banking/cards/aadvantage-aviator-red-world-elite-mastercard (last accessed Jan. 24, 2024).

[14]    https://americanairlines.gcs-web.com/node/41211/html, at p. 98 (last accessed Jan. 24, 2024).

CLASS ACTION COMPLAINT

*Mileage credits sold to co-branded credit cards and other partners*

We sell mileage credits to participating airline partners and non-airline business partners, including our co-branded credit card partners, under contracts with remaining terms generally from one to seven years as of December 31, 2022. Consideration received from the sale of mileage credits is variable and payment terms typically are within 30 days subsequent to the month of mileage sale. Sales of mileage credits to non-airline business partners are comprised of two components, transportation and marketing. We allocate the consideration received from these sales of mileage credits based on the relative selling price of each product or service delivered.

Our most significant mileage credit partner agreements are our co-branded credit card agreements with Citi and Barclaycard US. We

24.     The following chart, which displays revenue figures in millions of dollars, shows how much AA made from selling miles to credit card partners like Citi and Barclays from 2020 to 2022[15]:

|  | Year Ended December 31, | | |
|---|---|---|---|
|  | 2022 | 2021 | 2020 |
| Passenger revenue: | | | |
| Passenger travel | $ 41,425 | $ 23,896 | $ 13,456 |
| Loyalty revenue - travel [(1)] | 3,143 | 2,167 | 1,062 |
| Total passenger revenue | 44,568 | 26,063 | 14,518 |
| Cargo | 1,233 | 1,314 | 769 |
| Other: | | | |
| Loyalty revenue - marketing services | 2,657 | 2,166 | 1,825 |
| Other revenue | 513 | 339 | 225 |
| Total other revenue | 3,170 | 2,505 | 2,050 |
| Total operating revenues | $ 48,971 | $ 29,882 | $ 17,337 |

(1)   Loyalty revenue included in passenger revenue is principally comprised of mileage credit redemptions, which were earned from travel or co-branded credit card and other partners. See "*Loyalty Revenue*" below for further discussion on these mileage credits.

25.     Citi and Barclays have promoted and advertised the Citi-AAdvantage credit cards and Barclays-AAdvantage credit cards on their websites and on AA's website, as well as through other promotional materials, including promotional brochures given to AA's passengers on AA flights and promotional mailers sent directly to existing AAdvantage account holders.

26.     AA promoted and encouraged Plaintiffs and Class Members to apply for and use multiple Citi-AAdvantage credit cards and Barclays-AAdvantage credit cards by sending multiple applications before and after AAdvantage account holders applied for and received Citi-AAdvantage credit cards and Barclays-AAdvantage credit cards.

27.     On some Citi-AAdvantage credit card applications, there is an "Offer Availability" restriction. The restriction states that if a customer has received an enrollment bonus in the last 48

---

[15] *Id.* at p. 97 (last accessed Jan. 24, 2024).

1    months, that customer can open a new credit card account, but will not receive the enrollment bonus

2    miles associated with the application.[16]

3         28.     This 48-month restriction appears on the left side of the screen under the heading

4    "Card Details" alongside other promotional information including "Earn 2 miles for every $1 spent

5    at restaurants and gas stations and on eligible American Airlines purchases" and "First checked bag

6    is free on domestic itineraries."

7         29.     Other Citi-AAdvantage credit card applications do not have an "Offer Availability"

8    restriction.  In both instances – offers with the 48-month restriction and those without – applying for

9    and receiving multiple Citi-AAdvantage credit cards and Barclays-AAdvantage cards did not

10   violate AAdvantage contract terms.

11        30.     Citi and AAdvantage sent out mailers and emails inviting AAdvantage members to

12   apply for Citi-Advantage credit card accounts. The flyers invited members to apply for Citi-

13   AAdvantage credit cards, with enrolling members earning additional miles on their existing

14   AAdvantage account.

15        31.     To apply for the Citi-AAdvantage credit card through one of these offers, AA directs

16   the applicant to follow the URL link provided on the flyer and enter an offer code on the website.

17   The website redirects the applicant to a separate webpage where the applicant completes the

18   application with their personal information, including name, date of birth, and social security

19   number.

20        32.     Applicants, including Plaintiffs, who applied for Citi-AAdvantage credit cards using

21   the link listed on certain mailers from AA were not subject to a 48-month restriction.  These

22   putative class members should have received the bonus miles associated with each Citi-AAdvantage

23   credit card they received after completing the required transactions.

24        33.     Applicants who may have applied for Citi-AAdvantage credit cards via mailers that

25   did contain a 48-month restriction, should have received the bonus miles associated with the first

26

27   _____

28   [16]https://online.citi.com/US/ag/cards/application?ID=3001&HKOP=dfe3b504c477afeb9d6345999e6c3ead9a0a114a5c07d50eb962703533cc522f&app=UNSOL (last accessed Jan. 24, 2024).

1  Citi-AAdvantage credit card they received after completing the required transactions, within any

2  restricted 48-month time period.

3      34.     The 48-month restriction is not relevant to AA's decision to terminate Plaintiffs'

4  AAdvantage accounts.  The 48-month restriction confirms that applying for and receiving multiple

5  48-month offer availability Citi-AAdvantage credit cards does not violate any AAdvantage account

6  terms.  The 48-month restriction states that "American Airlines AAdvantage® bonus miles are not

7  available if you have received a new account bonus for a Citi® / AAdvantage® Platinum

8  Select® account in the past 48 months."[17] Nothing in the offer availability restriction limits the

9  number of Citi-AAdvantage credit cards an individual can open.

10 ***AA's Wrongful Termination of AAdvantage Accounts***

11      35.     Because no relevant restrictions existed for existing AAdvantage members to enroll

12 and open a new Citi-AAdvantage credit card—and, thus, to obtain the promotional bonus miles on

13 their existing AAdvantage account—some customers took advantage of this promotion and opened

14 multiple Citi-AAdvantage credit cards.

15      36.     For example, an existing AAdvantage account holder could open multiple Citi-

16 AAdvantage credit cards (including for personal and business use) and multiple Barclays-

17 AAdvantage credits cards, thereby earning the enrollment bonus miles in their AAdvantage account

18 from multiple credit card promotions.

19      37.     AA had no basis for terminated Plaintiffs' AAdvantage accounts. The AAdvantage

20 program Terms & Conditions include no offer availability limitation or other language stating that a

21 member cannot receive an enrollment bonus if the member had already received such a bonus

22 within a certain time period.[18]

23      38.     As noted above, certain fliers, mailers, and online application links do not contain an

24 "Offer Availability" restriction. Thus, multiple Cit-AAdvantage credits cards (and Barclays-

25 AAdvantage credit cards) could be opened without violating AA's Terms & Conditions.

26

27

28 [17] *Id.*
   [18] https://www.aa.com/i18n/AAdvantage-program/AAdvantage-terms-and-conditions.jsp (last
   accessed Jan. 24, 2024).

CLASS ACTION COMPLAINT

39.    AA's decision to terminate AAdvantage accounts entirely was improper and denied AAdvantage members the benefits they had accrued through previous purchases. It is unclear precisely *why* AA decided to terminate AAdvantage accounts—but it is clear that doing so was improper.

40.    Tellingly, even following termination of their AAdvantage accounts, customers were still able to access and use their Citi-AAdvantage credit cards and Barclays-AAdvantage credit cards—although any purchases would no longer earn bonus miles in their AAdvantage accounts. Even if their Citi-AAdvantage credit cards and Barclays-AAdvantage credit cards were closed at some point (including, in some cases, months later), there is no evidence to suggest that the customers engaged in fraud or violated Citi's or Barclays' terms and conditions by applying for, receiving approval for, and using the Citi-AAdvantage credit cards and Barclays-AAdvantage credit cards.

41.    But AA took action against customers even before issuing termination letters. One customer who posted his experiences online noted that he and his wife booked a ticket using their AAdvantage earned miles and their ticket was placed on hold and their account frozen, before eventually being terminated.[19]

42.    This tactic appeared to match other customers' treatment by AA, wherein their AAdvantage accounts were frozen for over a month, before being terminated. In that time period, when customers lost access to their account and were unable to use the account, AA did not inform them why their account was frozen or under review.[20]

43.    When AA did terminate customers' AAdvantage accounts, they did so by cancelling—effectively seizing—*all* bonus miles accrued up to that point in the account, as well as cancelling tickets that had been booked with miles but not yet used. Notably, these cancellations included seizures of bonus miles that had been earned from flying with tickets purchased in cash, earned through everyday purchases with Citi-AAdvantage credit cards or Barclays-AAdvantage

---

[19]    https://milestomemories.com/american-airlines-shutdown-my-account (last accessed Jan. 24, 2024).
[20]    *Id.*

CLASS ACTION COMPLAINT

1    credit cards (unrelated to the enrollment bonus for applying for the credit cards), earned through

2    everyday purchases with *other* credit cards, or earned through other promotional offers unrelated to

3    the Citi or Barclays promotions. Effectively, AA seized *all* bonus miles, regardless of how they

4    were accrued, *including those miles for which AA does not even allege were earned through fraud.*

5         44.    Even if AA believed that AAdvantage account holders had engaged in fraud or

6    improper conduct in taking advantage of the Citi-AAdvantage credit card or Barclays-AAdvantage

7    credit card promotions (even if while acting in compliance with the promotions' terms and

8    restrictions), AA could have simply seized those miles that were earned specifically based on

9    enrollment through those promotions. But AA did not do so. Instead, it saw this as an opportunity to

10   seize customers' entire accounts and all of their miles, and to close their existing accounts

11   completely. Doing so ensured that AA would no longer be required to provide the monetary

12   benefits to these account holders through trading in bonus miles for tickets, hotel promotions, or

13   flight seating upgrades, etc.—all of which held monetary value that AA would be responsible for. In

14   effect, AA seized on an opportunity to steal all of these AAdvantage account holders' earned bonus

15   miles.

16        45.    According to online reports, one customer explained that he and his wife had their

17   existing AAdvantage accounts terminated based on AA's claim that they engaged in fraudulent or

18   misrepresentative actions. A closer examination reveals that is certainly *not* the case, and AA

19   claimed they engaged in fraud in order to seize on an opportunity to terminate their accounts, delete

20   hundreds of thousands of bonus miles (which held monetary value), and canceled upcoming tickets

21   and bookings.[21]

22        46.    This customer explains that during 2018 he opened two business Citi-AAdvantage

23   credit cards for separate businesses, and in 2019 he opened three personal Citi-AAdvantage credit

24   cards and a personal Barclays-AAdvantage credit card. He did not engage in fraud when applying

25   for, being approved for, or using these credit cards. In doing so, he used a total of two codes

26   included in promotional mailer materials. His wife also opened two business Citi-AAdvantage

27

28   _____
     [21] *Id.*

1   credit cards for separate businesses in 2018, and she opened three personal Citi-AAdvantage credit

2   cards and a personal Barclays-AAdvantage credit card in 2019. Again, she used a total of two codes

3   included in promotional mailer materials.[22]

4       47.     Despite their non-fraudulent, non-misrepresentative activity, and their compliance

5   with the promotions' terms and restrictions, which resulted in their multiple approvals of credit

6   cards following review of their information and credit checks, AA alleged they had been fraudulent

7   and chose to terminate their accounts. At the time of termination, this customer lost a total of

8   approximately 280,000 bonus miles (including miles that had been used for upcoming bookings,

9   which were canceled by AA) and had five upcoming bookings canceled. His wife lost a total of

10  approximately 330,000 bonus miles (including miles that had been used for upcoming bookings,

11  which were canceled by AA) and had three upcoming bookings canceled. His AAdvantage account

12  had been open for more than 25 years, and his wife's AAdvantage account had been open for 6

13  years.

## PLAINTIFFS' ALLEGATIONS

*Plaintiff Ari Nachison*

16      48.     Plaintiff Ari Nachison is currently a resident of Los Gatos, Santa Cruz County,

17  California. Plaintiff Ari Nachison was previously a resident of San Jose, Santa Clara County,

18  California and resided in San Jose at the time his AAdvantage account was terminated on February

19  10, 2020.

20      49.     Plaintiff Ari Nachison opened his AAdvantage account on June 4, 2015. Plaintiff Ari

21  Nachison's AAdvantage member number was 8E92HH6. He opened and maintained only one

22  AAdvantage account.

23      50.     Plaintiff Ari Nachison earned miles credited to his AAdvantage account by

24  purchasing tickets on AA flights and by purchasing products and services with his Citi-AAdvantage

25  credit card.

---

[22] *Id.*

CLASS ACTION COMPLAINT

51.     While Plaintiff Ari Nachison's AAdvantage account was active, he received offers from Citi and AAdvantage inviting him to apply for Citi-AAdvantage credit cards and Barclays-AAdvantage credit cards. Plaintiff Ari Nachison's friends and family members also gave him Citi-AAdvantage credit card promotional offers, which did not contain offer availability or transferability restrictions.

52.     These Citi-AAdvantage credit card offers included enrollment bonus miles, which would be awarded to Plaintiff Ari Nachison's AAdvantage account after qualifying purchases were made within a specified time period.

53.     Between approximately November 5, 2017, and approximately December 9, 2019, Plaintiff Ari Nachison opened multiple Citi-AAdvantage credit cards, receiving approval for each of his credit card applications. Plaintiff Ari Nachison applied for each of these Citi-AAdvantage credit card accounts under his own name and social security number. Plaintiff Ari Nachison did not engage in fraud when applying for and opening these Citi-AAdvantage credit card accounts.

54.     Plaintiff Ari Nachison completed a separate application for each of these Citi-AAdvantage credit cards. Upon information and belief, Citi performed a new and separate credit check and performed separate underwriting for each new credit card application.

55.     Each of the Citi-AAdvantage credit cards had its own separate account number and physical card. Each account had its own independent credit limits.

56.     Plaintiff Ari Nachison made purchases on each of his Citi-AAdvantage credit cards, earning award miles applied to his AAdvantage account.

57.     Furthermore, each Citi-AAdvantage credit card required that Plaintiff Ari Nachison spend a specified amount of money on the card (typically between $2,000 and $5,000) within a certain amount of time (typically within three months of opening the credit card account) to earn the enrollment bonus miles. Plaintiff Ari Nachison performed all of the requirements to earn enrollment bonuses on each of the Citi-AAdvantage credit card accounts.

58.     As Plaintiff Ari Nachison fulfilled the enrollment bonus requirements, Citi awarded him with enrollment bonus miles ranging between 30,000 and 100,000 AAdvantage miles to his

AAdvantage account. Screenshots of some of Plaintiff Ari Nachison's awarded enrollment bonus miles to his AAdvantage account are provided below:

| Description | Elite Qualifying | | | Award miles | | |
|---|---|---|---|---|---|---|
| | Miles (EQMs) | Segments (EQSs) | Dollars (EQDs) | Base miles | Bonus miles | Total |
| Dec 24 2019 — CITICARD BONUS MILES | -- | -- | -- | -- | 50,000 | 50,000 |

| Description | Elite Qualifying | | | Award miles | | |
|---|---|---|---|---|---|---|
| | Miles (EQMs) | Segments (EQSs) | Dollars (EQDs) | Base miles | Bonus miles | Total |
| Dec 16 2019 — CITI AADVANTAGE PLATINUM CARD PURCHASES | -- | -- | -- | 284 | -- | 284 |
| Nov 15 2019 — CITI AADVANTAGE PLATINUM CARD PURCHASES | -- | -- | -- | 216 | -- | 216 |
| Nov 15 2019 — CITI AADVANTAGE BONUS FOR GAS STATION PURCHASES | -- | -- | -- | 41 | -- | 41 |
| Oct 22 2019 — SGN - LAX  Award  VDIAGH  ⊙ Flight details | -- | -- | -- | -210,000 | -- | -210,000 |
| Oct 18 2019 — CITI AADVANTAGE PLATINUM CARD PURCHASES | -- | -- | -- | 72 | -- | 72 |
| Oct 15 2019 — CITICARD BONUS MILES | -- | -- | -- | -- | 50,000 | 50,000 |
| Oct 15 2019 — CITI AADVANTAGE PLATINUM CARD PURCHASES | -- | -- | -- | 3,317 | -- | 3,317 |

- 13 -
CLASS ACTION COMPLAINT

59.     While Plaintiff Ari Nachison's AAdvantage account was active, he also opened Barclays-AAdvantage credit cards through promotions.

60.     These Barclays-AAdvantage credit card offers included enrollment bonus miles, which would be awarded to Plaintiff Ari Nachison's AAdvantage account after qualifying purchases were made within a specified time period.

61.     Plaintiff Ari Nachison opened multiple Barclays-AAdvantage credit cards, receiving approval for each of his credit card applications. Plaintiff Ari Nachison applied for each of these Barclays-AAdvantage credit card accounts under his own name and social security number. Plaintiff Ari Nachison did not engage in fraud when applying for and opening these Barclays-AAdvantage credit card accounts.

62.     Plaintiff Ari Nachison completed a separate application for each of these Barclays-AAdvantage credit cards. Upon information and belief, Barclays performed a new and separate credit check and performed separate underwriting for each new credit card application.

63.     Each of the Barclays-AAdvantage credit cards had its own separate account number and physical card. Each account had its own independent credit limits.

64.     As Plaintiff Ari Nachison fulfilled the enrollment bonus requirements, Barclays awarded him with enrollment bonus miles to his AAdvantage account.

65.     On October 22, 2019, Plaintiff Ari Nachison used 210,000 of his validly earned reward miles to purchase an upcoming AA ticket.

66.     As of December 26, 2019, Plaintiff Ari Nachison had 354,463 validly earned reward miles in his AAdvantage account:

ARI NACHISON

Award miles: 354,463  •  Million Miler℠ balance: 4,434

Member since Jun 4, 2015

CLASS ACTION COMPLAINT

67.     Therefore, as of December 26, 2019, Plaintiff Ari Nachison's AAdvantage account had a total worth of 564,463 award miles, in the form of 354,463 remaining miles plus his upcoming AA ticket valued at 210,000 miles.

68.     On February 10, 2020, Plaintiff Ari Nachison received an email from AA informing him that his AAdvantage account was terminated due to alleged "violations of the General AAdvantage Program Conditions." According to the termination email, "[t]hese violations are related to the accrual of ineligible miles and benefits; through fraud, misrepresentation and/or abuse of the AAdvantage Program." The termination email further stated that "[a]ll membership benefits associated with [his] account, including all remaining miles and issued award tickets, are forfeited, effective February 10th, 2020."

69.     Upon receiving the termination email, Plaintiff Ari Nachison did not know that AA was accusing him of fraud – as opposed to informing him that fraud had been committed by some other person or entity – or that the termination of his AAdvantage account was related to opening his Citi-AAdvantage credit cards or Barclays-AAdvantage credit cards.

70.     Due to AA's unilateral and wrongful termination of Plaintiff Ari Nachison's AAdvantage account, Plaintiff Ari Nachison lost 564,463 total miles that had been earned (including those miles spent for upcoming flights), which he had accrued over years through various purchases.

71.     As a direct result of AA's breach of contract, Plaintiff Ari Nachison suffered actual damages in the form of lost miles, which carry monetary value and required the expenditure of money to earn, and incurred reasonable and foreseeable economic harm.

72.     Prior to bringing this claim, Plaintiff Ari Nachison gave AA notice of his complaint based on these facts and claims by raising a Department of Transportation complaint on or around March 17, 2020, to which AA responded on March 23, 2020. Plaintiff Ari Nachison and AA continued to have communications via email regarding this complaint on May 6, 2020, and again on July 2, 2020, with AA offering no resolution.

73.     Additionally, Plaintiff Ari Nachison made a complaint to the Consumer Financial Protection Bureau based on these facts and claims on May 17, 2020 and August 9, 2020. Plaintiff

Ari Nachison received a response from Citi on May 22, 2020, asserting that AA was the responsible party for AAdvantage account closure as "the AAdvantage® program is owned and operated by American Airlines."

***Plaintiff Shanna Nachison***

74.     Plaintiff Shanna Nachison is currently a resident of Los Gatos, Santa Cruz County, California. Plaintiff Shanna Nachison was previously a resident of San Jose, Santa Clara County, California and resided in San Jose at the time her AAdvantage account was terminated on January 30, 2020.

75.     Plaintiff Shanna Nachison opened her AAdvantage account on November 14, 2017. Plaintiff Shanna Nachison's AAdvantage member number was 29UE9X0. She opened and maintained only one AAdvantage account.

76.     Plaintiff Shanna Nachison earned miles credited to her AAdvantage account by purchasing tickets on AA flights and by purchasing products and services with her Citi-AAdvantage credit card.

77.     While Plaintiff Shanna Nachison's AAdvantage account was active, she received offers from Citi and AAdvantage inviting her to apply for Citi-AAdvantage credit cards. Plaintiff Shanna Nachison's friends and family members also gave her Citi-AAdvantage credit card promotional offers, which did not contain offer availability or transferability restrictions.

78.     These Citi-AAdvantage credit card offers included enrollment bonus miles, which would be awarded to Plaintiff Shanna Nachison's AAdvantage account after qualifying purchases were made within a specified time period.

79.     Between approximately December 21, 2017 and approximately December 10, 2019, Plaintiff Shanna Nachison opened multiple Citi-AAdvantage credit cards, receiving approval for each of her credit card applications. Plaintiff Shanna Nachison applied for each of these Citi-AAdvantage credit card accounts under her own name and social security number. Plaintiff Shanna Nachison did not engage in fraud when applying for and opening these Citi-AAdvantage credit card accounts.

CLASS ACTION COMPLAINT

80.     Plaintiff Shanna Nachison completed a separate application for each of these Citi-AAdvantage credit cards. Upon information and belief, Citi performed a new and separate credit check and performed separate underwriting for each new credit card application.

81.     Each of the Citi-AAdvantage credit cards had its own separate account number and physical card. Each account had its own independent credit limits.

82.     Plaintiff Shanna Nachison made purchases on each of her Citi-AAdvantage credit cards, earning herself award miles applied to her AAdvantage account.

83.     Furthermore, each Citi-AAdvantage credit card required that Plaintiff Shanna Nachison spend a specified amount of money on the card (typically between $2,000 and $5,000) within a certain amount of time (typically within three months of opening the credit card account) to earn the enrollment bonus miles. Plaintiff Shanna Nachison performed all of the requirements to earn enrollment bonuses on each of the Citi-AAdvantage credit card accounts.

84.     As Plaintiff Shanna Nachison fulfilled the enrollment bonus requirements, Citi awarded her with enrollment bonus miles ranging between 30,000 and 100,000 AAdvantage miles to her AAdvantage account. A screenshot of some of Plaintiff Shanna Nachison's awarded enrollment bonus miles to her AAdvantage account is provided below:

| Description | | Elite Qualifying | | | Award miles | | |
|---|---|---|---|---|---|---|---|
| | | Miles (EQMs) | Segments (EQSs) | Dollars (EQDs) | Base miles | Bonus miles | Total |
| Dec 18 2019 | CITI AADVANTAGE BUSINESS CARD PURCHASES | -- | -- | -- | 9 | -- | 9 |
| Dec 12 2019 | CITI AADVANTAGE PLATINUM CARD PURCHASES | -- | -- | -- | 1,436 | -- | 1,436 |
| Dec 12 2019 | CITICARD BONUS MILES | -- | -- | -- | -- | 50,000 | 50,000 |

CLASS ACTION COMPLAINT

1    85.    As of December 26, 2019, Plaintiff Shanna Nachison had 550,664 validly earned

2  reward miles in her AAdvantage account:

3

4    SHANNA R NACHISON

5    Award miles: 550,664  •  Million Miler℠ balance: 15,906

6    Member since Nov 14, 2017

7

8    86.    On January 30, 2020, Plaintiff Shanna Nachison received an email from AA

9  informing her that her AAdvantage account was terminated due to alleged "violations of the

10 General AAdvantage Program Conditions." According to the termination email, "[t]hese violations

11 are related to the accrual of ineligible miles and benefits; through fraud, misrepresentation and/or

12 abuse of the AAdvantage Program." The termination email further stated that "[a]ll membership

13 benefits associated with [her] account, including all remaining miles and issued award tickets, are

14 forfeited, effective January 30th, 2020."

15    87.    Upon receiving the termination email, Plaintiff Shanna Nachison did not know that

16 AA was accusing her of fraud – as opposed to informing her that fraud had been committed by

17 some other person or entity – or that the termination of his AAdvantage account was related to

18 opening his Citi-AAdvantage credit cards.

19    88.    Due to AA's unilateral and wrongful termination of Plaintiff Shanna Nachison's

20 AAdvantage account, Plaintiff Shanna Nachison lost 550,664 total miles that had been earned,

21 which she had accrued over years through various purchases.

22    89.    As a direct result of AA's breach of contract, Plaintiff Shanna Nachison suffered

23 actual damages in the form of lost miles, which carry monetary value and required the expenditure

24 of money to earn, and incurred reasonable and foreseeable economic harm.

25    90.    Prior to bringing this claim, Plaintiff Shanna Nachison gave AA notice of her

26 complaint based on these facts and claims by raising a Department of Transportation complaint on

27 or around March 17, 2020 to which AA responded on March 25, 2020 and on May 6, 2020, with

28 AA offering no resolution.

CLASS ACTION COMPLAINT

91.     Additionally, Plaintiff Shanna Nachison made a complaint to the Consumer Financial Protection Bureau based on these facts and claims on May 17, 2020 and August 9, 2020. Plaintiff Shanna Nachison received a response from Citi on May 22, 2020, asserting that AA was the responsible party for AAdvantage account closure as "the AAdvantage® program is owned and operated by American Airlines."

## TOLLING OF THE STATUTE OF LIMITATIONS

### *Discovery Rule Tolling*

92.     Plaintiffs and Class Members could not have discovered through the exercise of reasonable diligence that their AAdvantage accounts were terminated as the result of anything related to their applying for, opening, or engaging in use of their Citi-AAdvantage credit cards or Barclays-AAdvantage credit cards.

93.     The generic emails informing Plaintiffs and Class Members that their accounts were terminated never mentioned Citi, Barclays, or the Citi-AAdvantage credit cards or Barclays-AAdvantage credit cards at issue. These termination emails, which included only boilerplate language, only mentioned "violations of the General AAdvantage Program Conditions" and stated that "[t]hese violations are related to the accrual of ineligible miles and benefits; through fraud, misrepresentation and/or abuse of the AAdvantage Program."

94.     Further, Plaintiffs and Class Members had no knowledge regarding the nondescript "violations" alleged by AA and could not have known which violations AA was referring to at that time. AA, which had exclusive knowledge of the conduct it deemed to be in violation, initially withheld all information which could have informed Plaintiffs and Class Members that AA's allegations of fraud were related to the Citi-AAdvantage credit cards or Barclays-AAdvantage credit cards at issue here.  AA's decision to conceal all specificity regarding the alleged fraud was an intentional attempt to delay and prevent Plaintiffs and Class Member from pursuing their legal rights.  Accordingly, any applicable statute of limitations is tolled.

*Fraudulent Concealment Tolling*

95.     Throughout the time period relevant to this action, AA failed to disclose to, or otherwise actively concealed from (and continues to conceal from), Class Members vital information about the basis for the termination of their AAdvantage accounts.

96.     AA kept Class Members ignorant of vital information essential to the pursuit of their claims. As a result, neither Plaintiff nor the other Class Members could have discovered the relevant issue to be litigated, even upon reasonable exercise of diligence.

97.     Throughout the Class Period, AA has been aware that it terminated the relevant AAdvantage accounts based on allegations of fraud related to Citi-AAdvantage credit cards and Barclays-AAdvantage credit cards.

98.     Despite its knowledge of the relevant issues, AA failed to disclose to, or otherwise actively concealed from (and continues to conceal from), Class Members this critical information, even though, at any point in time, it could have disclosed the alleged fraud through individual correspondence or by other means.

99.     Class Members justifiably relied on AA to disclose the contract terms it alleges were violated.  AA possessed all available information regarding the conduct it deemed to be in violation, and the alleged violations were not determinable by reading the relevant terms and conditions and were not discoverable through reasonable efforts by Plaintiffs and the other Class Members.

100.     Thus, the running of all applicable statutes of limitation have been suspended with respect to any claims that Plaintiffs and the other Class Members have sustained as a result of the termination of their AAdvantage accounts, by virtue of the fraudulent concealment doctrine.

*Estoppel*

101.     AA was under a continuous duty to disclose to Plaintiffs and the other Class Members the true character and nature of the fraud alleged which resulted in the termination of their AAdvantage accounts.

102.     Despite its knowledge of the relevant issues, AA failed to disclose to, or otherwise actively concealed from (and continues to conceal from), Plaintiffs and the other Class Members the

true nature and character of the fraud alleged and the reasons for terminating Plaintiffs and Class Members' AAdvantage accounts.

103.    Based on the foregoing, AA is estopped from relying on any statutes of limitations in defense of this action.

## CLASS ACTION ALLEGATIONS

104.    Plaintiffs bring this suit as a class action on behalf of themselves and on behalf of all others similarly situated pursuant to Federal Rule of Civil Procedure 23. This action satisfies the numerosity, typicality, adequacy, predominance, and superiority requirements of the provisions of Rule 23.

105.    Plaintiffs seek to represent the following class:

> All persons who maintained an AAdvantage membership, which was terminated by AA based on allegations of fraud related to the AAdvantage member's application for, opening of, or use of a Citi-AAdvantage credit card or Barclays-AAdvantage credit card.

106.    Plaintiffs reserve the right to modify or amend the definition of the proposed Class before the Court determines whether certification is appropriate and as the parties engage in discovery.

107.    Excluded from the Class are AA; any person, firm, trust, corporation, or other entity related to or affiliated with AA, including without limitation persons who are officers, directors, employees, agents, associates or partners of defendants; Plaintiffs' Counsel and employees of their firm; and the Court, including employees of the Court.

108.    *Numerosity*: Members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class Members remains unknown at this time, upon information and belief, there are thousands of putative Class Members who are generally ascertainable by appropriate discovery.

109.    *Commonality*: This action involves common questions of law and fact, which predominate over questions affective individual Class Members. These common legal and factual questions include, but are not limited to, the following:

a.  Whether class members performed pursuant to AA's offer when they opened a Citi-AAdvantage credit card or Barclays-AAdvantage credit card account and fulfilled the enrollment bonus requirements;

b.  Whether a contract was formed at the time when a Class Member opened a AAdvantage account;

c.  Whether a contract was formed at the time when a class member opened a Citi-AAdvantage credit card or Barclays-AAdvantage credit card account;

d.  Whether AA wrongfully terminated class members' AAdvantage accounts;

e.  Whether AA wrongfully forced Class Members to forfeit earned miles, including miles that had been accrued before their application for, opening of, or use of a Citi-AAdvantage credit card or Barclays-AAdvantage credit card;

f.  Whether AA breached the contract when it wrongfully terminated AAdvantage accounts and forced the forfeiture of earned miles.

110.  ***Typicality:*** Plaintiffs' claims are typical or those of the other Class Members because, *inter alia*, all Class Members were injured through the common misconduct described above and were subject in the same manner to AA's improper conduct. Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all members of the Class.

111.  ***Adequacy of Representation:*** Plaintiffs will fairly and adequately represent and protect the interests of the Class in that they have no disabling conflicts of interest that would be antagonistic to those of the other Class Members. Plaintiffs seek no relief that is antagonistic or adverse to the other Class Members, and the infringement of the rights and the damages Plaintiffs have suffered are typical of other Class Members. Plaintiffs have retained counsel experienced in complex consumer class action litigation, and Plaintiffs intend to prosecute this action vigorously.

112.  ***Superiority:*** Class litigation is an appropriate method for the fair and efficient adjudication of the claims involved. Class action treatment is superior to all other available methods for the fair and efficient adjudication of the controversy alleged herein; it will permit a large number of Class Members to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and

CLASS ACTION COMPLAINT

expense that hundreds of individual actions would require. Class action treatment will permit the adjudication of relatively modest claims by certain Class Members, who could not individually afford to litigate a complex claim against large corporate defendants. Further, even for those Class Members who could afford to litigate such a claim, it would still be economically impractical.

113.    The nature of this action and the nature of laws available to Plaintiffs and the Class make the use of the class action device a particularly efficient and appropriate procedure to afford relief to Plaintiffs and the Class for the wrongs alleged because AA would necessarily gain an unconscionable advantage since it would be able to exploit and overwhelm the limited resources of each individual Class Member with superior financial and legal resources; the costs of individual suits could unreasonably consume the amounts that would be recovered; proof of a common course of conduct to which Plaintiffs were exposed is representative of that experienced by the Class and will establish the right of each Class Member to recover on the cause of action alleged; and individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation.

114.    This class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Because of the number and nature of common questions of fact and law, multiple separate lawsuits would not serve the interest of judicial economy.

115.    Notice of a certified class action and of any result or resolution of the litigation can be provided to Class Members by first-class mail, email, or publication, or such other methods of notice as deemed appropriate by the Court.

116.    Plaintiffs do not anticipate any difficulty in the management of this litigation.

**CAUSES OF ACTION**
**FIRST CLAIM FOR RELIEF**
**BREACH OF CONTRACT**
**(By All Plaintiffs on Behalf of the Class)**

117.    Plaintiffs incorporate by reference all allegations in the preceding paragraphs as though fully set forth herein.

118.    Plaintiffs and Class Members maintained AAdvantage accounts with AA in order to earn bonus miles that they then planned to redeem for various program benefits.

119.    Plaintiffs and Class Members earned bonus miles in their AAdvantage accounts by spending money, and saved these accrued bonus miles for later use.

120.    Plaintiffs and Class Members entered into valid and enforceable contracts with AA for earning, maintaining, and spending miles through their AAdvantage accounts.

121.    AA also entered into agreements with Citi and Barclays for co-branding and promoting Citi-AAdvantage credit cards and Barclays-AAdvantage credit cards. Under such agreements, Citi and Barclays solicited existing AAdvantage members, including Plaintiffs and Class Members, through promotional materials, soliciting them to apply for Citi-AAdvantage credit cards and Barclays-AAdvantage credit cards.

122.    Under such agreements and promotions, any person who applied for a Citi-AAdvantage credit card or Barclays-AAdvantage credit card, was approved, and then completed the promotional requirements (typically including paying a fee or completing certain transactions within the specified time period) would earn a bonus miles to be credited to the person's AAdvantage account.

123.    Plaintiffs and Class Members applied for Citi-AAdvantage credit cards and Barclays-AAdvantage credit cards, were approved to use such credit cards, met the requirements to earn bonus miles under these promotions, and were credited bonus miles in their AAdvantage accounts.

124.    A meeting of the minds having occurred, and acting in reliance on AA's promise to provide bonus promotional miles, Plaintiffs and Class Members fully performed their obligations by opening valid Citi-AAdvantage credit card and Barclays-AAdvantage credit card accounts and

- 24 -

completing the promotional requirements (including paying fees and/or completing transactions) within their respective time periods. Accordingly, a contract was formed between Plaintiffs and Class Members and AA.

125.    After the enrollment bonus miles were awarded to Plaintiffs and Class Members, AA breached this contract by unilaterally and wrongfully terminating Plaintiffs' and Class Members' AAdvantage accounts, forcing them to forfeit validly earned miles, leaving them unable to use the bonus miles they had accrued—potentially over *years* of flights and purchases, including based on transactions occurring *before* their opening of Citi-AAdvantage credit card or Barclays-AAdvantage credit card accounts.

126.    Plaintiffs and Class Members complied with the promotional requirements and restrictions when opening their Citi-AAdvantage credit card or Barclays-AAdvantage credit card accounts. Plaintiffs and Class Members relied on these promotional requirements and restrictions, were approved for their credit cards, and paid fees and/or engaged in the necessary transactions as required by the promotions' terms. Despite Plaintiffs' and Class Members' compliance, AA still terminated their AAdvantage accounts, thereby depriving them of the monetary value of the bonus miles they had rightfully earned and accrued. Plaintiffs and Class Members relied on AA's, Citi's, and Barclays' promotional requirements and restrictions, spent money as a result, and thus suffered harm through the expenditure of money to earn a benefit that they were ultimately deprived of by AA's improper termination of their AAdvantage accounts.

127.    Plaintiffs and Class Members would not have opened Citi-AAdvantage credit card or Barclays-AAdvantage credit card accounts and spent money on those accounts had they known that AA would close their AAdvantage accounts and force them to forfeit their validly earned bonus miles.

128.    Plaintiff and Class Members did not receive the benefit of their bargain. In opening Citi-AAdvantage credit card or Barclays-AAdvantage credit card accounts and spending at least the minimum amount required within their respective time periods, Plaintiffs bargained to earn bonus miles for their AAdvantage accounts which could then be redeemed for various program benefits, such as flights, hotels, and rentals cars. But because AA unilaterally and wrongfully closed

Plaintiffs' and Class Members' AAdvantage accounts, Plaintiffs and Class Members lost their validly earned miles, or had flights booked with their validly earned miles canceled, or both.

129.    As a direct result of AA's breach of contract, Plaintiffs and Class Members suffered actual damages in the form of lost miles (including cancelation of flights that were booked with redeemed miles), which carry monetary value and required the expenditure of money to earn, and incurred reasonable and foreseeable economic harm.

## SECOND CLAIM FOR RELIEF
### UNJUST ENRICHMENT
**(By All Plaintiffs on Behalf of the Class)**

130.    Plaintiffs incorporate by reference all allegations in the preceding paragraphs as though fully set forth herein.

131.    Plaintiffs bring this cause of action individually and on behalf of the Class.

132.    AA profited from the Citi-AAdvantage credit cards and Barclays-AAdvantage credit cards by selling miles to Citi and Barclays, respectively. These sales are a significant source of revenue for AA. Upon information and belief, AA accepted and retained the benefits conferred by Citi and Barclays.

133.    AA would not otherwise have obtained these benefits if not for AA's contractual agreement Citi and Barclays, and if not for Plaintiffs' and Class Members' actions to apply for, be approved for, and use of the Citi-AAdvantage credit cards and Barclays-AAdvantage credit cards.

134.    It would be inequitable and unjust for AA to retain these benefits from Citi and Barclays after AA breached its contract with Plaintiffs, which formed the basis for AA to receive the benefits provided by Citi and Barclays.

135.    AA further profited from its unlawful decision to terminate Plaintiffs' AAdvantage accounts.

136.    AA' decision to unlawfully terminate Plaintiffs' AAdvantage accounts resulted in the confiscation of properly obtained frequent flier miles, those earned lawfully via Plaintiffs' and Class Members' Citi-AAdvantage credit cards and Barclays-AAdvantage credit cards, as well as frequent flier miles otherwise credited to Plaintiffs' and Class Members' AAdvantage accounts

(including through transactions directly with AA). These represent a significant profit realized by AA in the form of frequent flier miles, which carry monetary value, that are no longer redeemable by Plaintiffs.

137.    It would be inequitable and unjust for AA to retain the benefits it received by unlawfully terminating Plaintiffs' AAdvantage accounts.

138.    AA's retention of these wrongfully obtained profits would violate the fundamental principles of justice, equity, and good conscience.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and members of the proposed Class, respectfully request that the Court:

a.    Determine that the claims alleged herein may be maintained as a class action under Federal Rule of Civil Procedure 23, and issue an order certifying one or more classes as defined above;

b.    Appoint Plaintiffs as the representatives of the Class and their counsel as Class counsel;

c.    Award all actual, general, special, incidental, statutory, punitive, and consequential damages and restitution to which Plaintiffs and the Class Members are entitled;

d.    Award pre-judgment and post-judgment interest on such monetary relief;

e.    Award reasonable attorneys' fees and costs; and

f.    Grant such further relief that this Court deems appropriate.

## **DEMAND FOR JURY TRIAL**

Plaintiffs demand a trial by jury on all issues so triable.

CLASS ACTION COMPLAINT

1 | DATED: January 29, 2024

2

3                                        /s/ Alex R. Straus
                                         Alex R. Straus (SBN 321366)
                                         **MILBERG COLEMAN BRYSON**
                                         **PHILLIPS GROSSMAN, PLLC**
4                                        280 S. Beverly Drive, PH Suite

5                                        Beverly Hills, CA 90212
                                         Telephone:  (866) 252-0878
6                                        Facsimile:   (615) 921-6501
                                         astraus@milberg.com

7

8                                        William A. Ladnier (SBN 330334)
                                         Virginia Ann Whitener*
9                                        **MILBERG COLEMAN BRYSON**
                                         **PHILLIPS GROSSMAN, PLLC**
10                                       800 Gay Street, Suite 1100

11                                       Knoxville, TN 37929
                                         Telephone:  865-247-0080
12                                       wladnier@milberg.com
                                         gwhitener@milberg.com

13

14                                       *Attorney for Plaintiffs*

15                                       * motion to be admitted *pro hac vice*
                                         forthcoming.

16

17

18

19

20

21

22

23

24

25

26

27

28

**CLASS ACTION COMPLAINT**