MARK W. ROBERTSON (S.B. #200220)
mrobertson@omm.com
O'MELVENY & MYERS LLP
Times Square Tower
7 Times Square
New York, New York 10036-6537
Telephone: +1 212 326 2000
Facsimile: +1 212 326 2061

JASON ZARROW (S.B. #297979)
jzarrow@omm.com
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA 90071
Telephone: +1 213 430 6000
Facsimile: +1 213 430 6407

Attorneys for Defendant
American Airlines, Inc.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE

| | |
|---|---|
| ARI NACHISON, SHANNA NACHISON, DERRICK GALLAGHER, ABIGAIL GALLAGHER, ERIC LINK, MIRANDA LINK, ELLIOT WEINER, and RACHEL FEIT on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br>   v.<br><br>AMERICAN AIRLINES, INC.,<br><br>        Defendant. | Case No. 5:24-cv-00530PCP<br><br>**NOTICE OF MOTION AND MOTION TO TRANSFER VENUE [28 U.S.C. § 1404(A)]; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Hearing Date: May 2, 2024<br>Time: 10:00 a.m.<br>Courtroom: 8<br>Judge: Hon. P. Casey Pitts |

## NOTICE OF MOTION AND MOTION

TO THE COURT, PLAINTIFFS, AND THEIR ATTORNEYS OF RECORD IN THIS ACTION:

PLEASE TAKE NOTICE that on May 2, 2024, at 10:00 a.m., or as soon thereafter as this matter may be heard in Courtroom 8 of the above Court, located on the 4th Floor of the Robert F. Peckham Courthouse, located at 280 South First Street, San Jose, CA 95113, defendant American Airlines, Inc. ("American") will move, and hereby does move, pursuant to 28 U.S.C. § 1404(a), to transfer this matter to the Northern District of Texas, Fort Worth Division.

American's motion to transfer is made on the basis that this putative nationwide class action arises out of events that took place in Fort Worth, Texas and is governed by Texas law. Moreover, six of the eight named Plaintiffs' claims have no nexus to this jurisdiction, and thus would need to be dismissed for lack of personal jurisdiction unless the case is transferred. Because venue in Texas would be more convenient for the parties and witnesses and serve the interest of justice, American respectfully requests that the Court transfer this case to the Northern District of Texas, Fort Worth Division.

This Motion is based on this Notice of Motion and Motion, the supporting Memorandum of Points and Authorities, the declaration of Miki Rezentes, all pleadings and papers on file with the Court in this action, and on such other matters as may be presented to the Court at or before the hearing of this Motion.

1  Dated:  March 6, 2024

2                                          MARK W. ROBERTSON
                                           JASON ZARROW
3                                          O'MELVENY & MYERS LLP

5                                          By:  */s/ Mark W. Robertson*
                                                   Mark W. Robertson
6                                          Attorneys for Defendant
                                           American Airlines, Inc.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

In this putative nationwide class action, Plaintiffs allege American Airlines, Inc. ("American") breached a contract regarding its frequent flyer program (called AAdvantage) that is governed by Texas law, based upon actions that American took in Fort Worth, Texas. The Northern District of Texas, Fort Worth Division, is the natural forum for the resolution of this dispute. And while a plaintiff's choice of forum always weighs against transfer, the named Plaintiffs' choice of forum is entitled to considerably less weight here, where six of the eight named Plaintiffs' claims have no nexus to this jurisdiction, and thus would need to be dismissed for lack of personal jurisdiction unless the case is transferred. (*See* Dkt. No. 17.)

Several additional reasons support transfer. Plaintiffs' lawsuit is based on the termination of putative class members' AAdvantage accounts based on findings of fraud and abuse. Before American made those decisions, it individually reviewed the facts and circumstances relating to each AAdvantage account. Those reviews and decisions were made by individuals living and working in Texas, where both the documentary evidence and key witnesses are located. Further, the merits of this case are governed by Texas law, which the federal courts in Texas are more frequently called upon to apply, and time to trial in the Northern District of Texas is almost half what it is here. Accordingly, transfer furthers the interests of both convenience and justice.

Accordingly, American respectfully requests that the Court transfer venue pursuant to 28 U.S.C. § 1404(a).

## II. STATEMENT OF FACTS

Four of the named Plaintiffs currently reside in this District, yet only two resided in this District at the time their claims arose—i.e., when their AAdvantage accounts were terminated. (FAC ¶¶ 54, 80, 98, 125.) The other four Plaintiffs reside in Michigan and Connecticut. (*Id*. ¶¶ 148, 166, 182, 204.) All of the

Plaintiffs claims arise from the termination of their memberships in American's frequent flyer program—AAdvantage—based upon findings by American that the named Plaintiffs and putative class members engaged in fraud and abuse of the program. (FAC ¶ 236.) Those decisions were made by analysts working at American's headquarters in the Northern District of Texas. (Declaration of Miki Rezentes ("Rezentes Decl.") ¶¶ 2, 4.) The relevant decisionmakers are thus in Fort Worth, where American has its principal place of business. (*Id.*) Six analysts responsible for the termination decisions are still American employees and work for American at its Fort Worth headquarters. (*Id.* ¶ 4.) Two—James Blake and Jennifer Tucker—are no longer American employees, and they too reside within the Northern District of Texas. (*Id.*)

In addition to the analysts who conducted the fact investigations related to the individual members' accounts and an employee who assisted them, the employees responsible for overseeing the AAdvantage program and its program partnerships (including American's relationship with Citi and Barclays), are also potential witnesses. Four such individuals no longer work for American: Chelsea Casiano, who held the role of Senior Analyst – AAdvantage Product Expert; Bridget Blaise-Shamai, who held the role of President of the AAdvantage Program; Janet Ferguson, who held the role of Director of AAdvantage Customer Service; and Neva Ignatow, who held the role of Director of Domestic Program Partnerships. (*Id.* ¶¶ 5–7.) These potential witnesses all reside within the Northern District of Texas. (*Id.*) By contrast, American is unaware of any essential third-party witnesses who reside in this District or relevant documentary evidence that would be located here.

### III.   ARGUMENT

28 U.S.C. § 1404(a) governs motions to transfer and states: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been

brought or to any district or division to which the parties have consented."

This action could have been brought in the Northern District of Texas. The Northern District of Texas would have subject matter jurisdiction over this action under the Class Action Fairness Act for the same reasons as this Court. (FAC ¶ 11.) The Northern District of Texas—unlike this Court—can exercise general jurisdiction over American because American's principal place of business is located there. (Rezentes Decl. ¶ 2.) And venue is proper in the Northern District of Texas because American resides there, and a substantial part of the events giving rise to the claims occurred there. (*Id.* ¶¶ 3–9.)

"A motion to transfer venue under § 1404(a)" then "requires the court to weigh multiple factors in its determination whether transfer is appropriate in a particular case. For example, the court may consider: (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof." *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000). The factors are not exclusive, and not every factor will weigh heavily in the outcome of each case.

Here, the overwhelming majority of these factors—including the availability of compulsory process to compel attendance of non-party witnesses, which is typically considered the most important factor—favor transfer.

### 1. The Contract At Issue Was Drafted In Texas.

The first *Jones* factor favors transfer. Where, as here, the parties were not all in the same physical location for the negotiation and execution of the contracts, courts look to where the agreement was drafted. *See, e.g., Inherent.com v.*

*Martindale-Hubbell*, 420 F. Supp. 2d 1093, 1102 (N.D. Cal. 2006); *Vernon v. Qwest Communications Int'l, Inc.*, 643 F. Supp. 2d 1256, 1270 (W.D. Wash. 2009). Here, the Terms and Conditions governing American's AAdvantage program constitute the relevant agreement, and American drafted those Terms and Conditions in Texas. (Rezentes Decl. ¶ 3.) Thus, this factor weighs in favor of transfer.

### 2. Texas Courts Are Most Familiar With The Governing Law.

The second *Jones* factor—which state is most familiar with the governing law—also favors transfer. The contract on which Plaintiffs' case is based is governed by Texas law. (*Id.*) Each version of the Terms and Conditions in effect at all relevant times in this litigation contained a Texas choice-of-law provision. (*Id.*) Federal courts in Texas are likely to be more familiar than this Court with Texas contract law.[1]

### 3. Plaintiffs' Choice Of Forum Should Be Afforded Little Weight.

The next *Jones* factor, the Plaintiffs' choice of forum, always weighs against transfer. But it is entitled to less weight here for two reasons. First, Plaintiffs seek to represent a nationwide class of individuals who did not choose this forum. *See Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987) ("when an individual brings a derivative suit or represents a class, the named plaintiff's choice of forum is given less weight") (citation omitted).

Second, six of eight named Plaintiffs cannot even bring suit here—and obviously, a court should not defer to a plaintiff's decision to sue in a forum that cannot hear the claim. (*See* Dkt. No. 17.) The claims brought by Derrick Gallagher, Abigail Gallagher, Eric Link, Miranda Link, Elliot Weiner, Rachel Feit

---

[1] In addition to a breach of contract claim, Plaintiffs have also pled a claim for unjust enrichment. (FAC ¶¶ 261-69.) But for the reasons explained in American's concurrently-filed motion to dismiss, Plaintiffs' state-law claim for unjust enrichment is preempted by the Airline Deregulation Act ("ADA"). (*See* Dkt. No. 17.) Indeed, as explained in American's motion to dismiss, the only claim that Plaintiffs can actually assert in this action is a breach of contract claim, and Plaintiffs' breach of contract claim is governed by Texas law. (*See id.*)

do not arise out of or relate to American's contacts here. (*See id.* at 5.) Unless the case is transferred, three quarters of the named Plaintiffs' claims will need to be dismissed for lack of personal jurisdiction. If anything, transfer would benefit the named Plaintiffs (by saving their claims), while allowing this Court to avoid this jurisdictional issue. And it would benefit the putative class: it would ensure that the court considering class certification can choose among eight named Plaintiffs, thus affording the putative class the chance at "the best possible representation." *China Agritech v. Resh*, 584 U.S. 732, 740 (2018) (quotations omitted).

### 4. The Parties Have Greater Contacts With Texas.

The fourth *Jones* factor—the respective parties' contacts with the forum—likewise favors transfer. Only half of the named Plaintiffs currently reside in this forum (FAC ¶¶ 2-9), and most of the putative class members they seek to represent have no particular contacts with this forum. Such circumstances favor transfer. *See Roberts v. CR England, Inc.*, 827 F. Supp. 2d 1078, 1087 (N.D. Cal. 2011) ("On balance, the fourth factor — the parties' respective contacts with the forum — also favors Utah. Defendants have greater contacts with Utah, where they are headquartered. Although Roberts and McKay live in California, they seek to represent a nationwide class of drivers, many of whom may not have had contact with this district, but likely have had contact with Utah."); *Saunders v. USAA Life Ins. Co.*, 71 F. Supp. 3d 1058, 1061 (N.D. Cal. 2014) ("The Fourth and fifth factors favor transfer because Defendant has little connection with California outside of the presence of policyholders in this state, and all of the conduct underlying the premium increase occurred in Texas.").

### 5. The Parties Have Greater *Relevant* Contacts With Texas.

The fifth *Jones* factor—the respective parties' contacts related to the Plaintiffs' cause of action with the forum—even more strongly favors transfer. Plaintiffs allege that American "maintained a base in this District located at the San Francisco International Airport," and "Plaintiffs used their miles in their

AAdvantage accounts for flights departing from and arriving at airports in this District." (FAC ¶ 12.)  But Plaintiffs' claims do not relate to flights operated by American in and out of San Francisco.  Plaintiffs' claims arise out of the alleged "wrongful and unilateral termination of AAdvantage accounts, resulting in the loss of airline miles benefits that had been accrued based on previous purchases." (FAC ¶ 1.)  American employees in Texas made the relevant termination decisions. (Rezentes Decl. ¶¶ 4, 8.)  Thus, even to the extent that the parties have some contacts with this forum, the parties' *relevant* contacts are all with Texas—not here.

The court reached a similar conclusion in *Hoefert v. American Airlines Inc.*, No. CV-17-02996-PHX-SPL, 2018 WL 2740276 (D. Ariz. June 7, 2018).  There, "the Plaintiff argue[d] that the Defendant transacts business in the forum because of its flight operations at Phoenix Sky Harbor International Airport located in Phoenix, Arizona." *Id.* at *2.  But the court in transferring the action noted that "[t]he majority of the events giving rise to this litigation were based in operations and actions that took place in Fort Worth, Texas." *Id.* at *3; *see also Chen v. Pioneer Oil, LLC*, 472 F. Supp. 3d 704, 709 (N.D. Cal. 2020) ("While Pioneer Oil has business contacts in the Northern District of California, Chen does not allege that any of the challenged conduct occurred here.") (citation omitted).  That is equally true here.

### 6. Litigation Would Be More Efficient In Texas.

The sixth *Jones* factor—the differences in the costs of litigation in the two forums—favors transfer.  "Generally, litigation costs are reduced when venue is located near the most witnesses expected to testify." *Park v. Dole Fresh Vegetables, Inc.*, 964 F. Supp. 2d 1088, 1095 (N.D. Cal. 2013).  Here, the current and former American employees with information relevant to this dispute are located within the Northern District of Texas. (Rezentes Decl. ¶¶ 4–7.)  There are at least 12 such witnesses who reside in Texas. (*Id.*)  By contrast, while four of the eight named Plaintiffs reside here, the other four do not, and the nationwide class

that they seek to represent is located throughout the country. (FAC ¶¶ 2–9, 236.) In such circumstances, courts have noted that a more central location can reduce costs. *See Roberts*, 827 F. Supp. 2d at 1087 ("The sixth factor, the costs of litigation, appears to favor transfer" where the named plaintiffs "and certain drivers and witnesses live in California" but "[t]he remaining drivers live in locations throughout the United States. Utah is more centrally located than this district.").

Further, the most recent Federal Court Management Statistics published by the Administrative Office of the U.S. Courts on behalf of the Federal Judiciary, show that this Court faces a significantly higher caseload, with significantly longer times to trial, than the Northern District of Texas. *See* Fed. Ct. Mgmt. Stats.–Profiles, U.S. Courts (Dec. 31, 2023), available at https://www.uscourts.gov/statistics/table/na/federal-court-management-statistics/2023/12/31-1 (last visited February 25, 2024). The median time from filing to trial for civil cases in the Northern District of Texas is 27.3 months, with 11.1% of civil cases remaining on the docket for over three years. *Id.* By contrast, the median time from filing to trial for civil cases in the Northern District of California is 48.9 months, with 21.7% of civil cases remaining on the docket for over three years. *Id.* Thus, this case could proceed more efficiently in the Northern District of Texas, at a lower cost, and with a lower burden on this Court and the local jury pool.[2]

**7.     Non-Party Witnesses Can Be Compelled To Testify In Texas.**

The seventh *Jones* factor—the availability of compulsory process to compel attendance of unwilling non-party witnesses—strongly favors transfer. Indeed, this factor is generally considered the most important. *See generally Park*, 964 F. Supp.

---

[2] This is undoubtedly driven by the fact that there are an average of 1,017 pending cases per judgeship in the Northern District of California, compared with an average of 473 pending cases per judgeship in the Northern District of Texas. *See id.* With each Judge here overseeing more than twice as many pending cases, it is not surprising that the time to trial is nearly twice as long.

2d at 1095 ("[t]he convenience of witnesses is often the most important factor in resolving a motion to transfer.") (citation and internal quotation marks omitted).

The crux of Plaintiffs' lawsuit is American's decision to terminate their AAdvantage accounts because of "violations of the General AAdvantage Program Conditions … related to the accrual of ineligible miles and benefits; through fraud, misrepresentation and/or abuse of the AAdvantage Program." (FAC ¶¶ 74, 92, 118, 143, 161, 199, 220.) The relevant American employees who made those termination decisions all reside in the Northern District of Texas (Rezentes Decl. ¶¶ 4, 8), where they will be subject to compulsory process. Thus, the Northern District of Texas can compel these former American employees to appear at trial, while those witnesses are beyond the subpoena power of this Court.[3]

Moreover, at a minimum, the Northern District of Texas would be a more convenient forum for the witnesses most important to this case. *See, e.g., Carder v. Cont'l Airlines, Inc.*, Case No. 09cv1448 DMS (BLM), 2009 WL 10725727, at *2 (S.D. Cal. Sept. 28, 2009) (finding the convenience of witnesses decidedly favored transfer to the Southern District of Texas in a putative class action where the defendant airline was headquartered in Houston and "many of its executives, managers, and operating personnel work in Houston, including managers" who

---

[3] *See Saleh v. Titan Corp.*, 361 F. Supp. 2d 1152, 1165 (S.D. Cal. 2005) (granting motion to transfer venue where: "Clearly, the current and former employees of non-party CACI PT, who have information material to this suit and who reside in the Eastern District of Virginia, would be beyond the reach of this court's subpoena power but not that of a court in the Eastern District of Virginia.") (citing Fed.R.Civ.P. 45(b)(2)); *Kinney v. Clark*, Case No. 16-cv-01260-LB, 2016 WL 2739454, *2 (N.D. Cal. May 11, 2016) (granting motion to transfer because the witnesses were located "400 miles away, outside the reach of compulsory process"); *Wave Studio, LLC v. Mastercard Int'l, Inc.*, Case. No. 14-cv-01342-RS, 2014 WL 5107135, at * (N.D. Cal. Oct. 10, 2014) (granting motion to transfer where, "while the Southern District of New York may not have all potential non-party witnesses within its subpoena power, it is certainly more likely to have jurisdiction over—and to be more convenient for—key witnesses than would be this Court"); *Machado v. CVS Pharmacy, Inc.*, Case No. 13-cv-04501-JCS, 2014 WL 631038, at *4 (N.D. Cal. Feb. 18, 2014) (granting motion to transfer because "[t]he vast majority of witnesses in this case are located in Hawaii, where really all of the events in this case occurred" and "at least one of the non-party witnesses in Hawaii no longer works for Defendant").

MOTION TO TRANSFER VENUE
5:24-CV-00530-PCP

were involved in the decision-making and administration of agreements that were at issue in the case).

### 8. The Evidence Relating To Plaintiffs' Claims Is In Texas.

Finally, the eighth *Jones* factor—the ease of access to sources of proof—also favors transfer. As courts in this District have recognized, "[d]ocuments pertaining to defendants' business practices are most likely to be found at [the defendant's] principal place of business." *Foster v. Nationwide Mut. Ins. Co.*, 2007 WL 4410408, at *6 (N.D. Cal. Dec. 14, 2007) (citation omitted); *see also Ventress*, 486 F.3d at 1119 (transferring venue to Hawaii in part because "most of the documentary evidence [was] located in Hawaii."). That is the case here. (Rezentes Decl. ¶ 9.) And even where much of the documentary evidence is in electronic format, courts have found that ease of access to evidence favors transfer to the venue of the forum where the defendant has its principal place of business—here, the Northern District of Texas. *Carder*, 2009 WL 10725727, at *2-3.

## IV. CONCLUSION

For these reasons, American respectfully requests that the Court transfer this case to the Northern District of Texas, Fort Worth Division.

Dated: March 6, 2024

        MARK W. ROBERTSON
        JASON ZARROW
        O'MELVENY & MYERS LLP

By: */s/ Mark W. Robertson*
      Mark W. Robertson
Attorneys for Defendant
American Airlines, Inc.