1   MARK W. ROBERTSON (S.B. #200220)
    mrobertson@omm.com
2   O'MELVENY & MYERS LLP
    Times Square Tower
3   7 Times Square
    New York, New York  10036-6537
4   Telephone:     +1 212 326 2000

5   JASON ZARROW (S.B. #297979)
    jzarrow@omm.com
6   O'MELVENY & MYERS LLP
    400 South Hope Street
7   Los Angeles, CA 90071
    Telephone:     +1 213 430 6000
8
    Attorneys for Defendant
9   American Airlines, Inc.

10

                **UNITED STATES DISTRICT COURT**
11
                **NORTHERN DISTRICT OF CALIFORNIA**
12
                    **SAN JOSE DIVISION**
13

14
    ARI NACHISON, SHANNA NACHISON,        Case No. 5:24-cv-00530-PCP
15  DERRICK GALLAGHER and ABIGAIL
    GALLAGHER, on behalf of themselves and all   **REPLY MEMORANDUM OF POINTS**
16  others similarly situated,            **AND AUTHORITIES IN SUPPORT OF**
                                          **MOTION TO TRANSFER VENUE [28**
17                 Plaintiffs,            **U.S.C. § 1404(A)]**

18         v.                             Hearing Date:   May 2, 2024
                                          Time:           10:00 a.m.
19  AMERICAN AIRLINES, INC.,              Courtroom:      8
                                          Judge:          Hon. P. Casey Pitts
20                 Defendant.

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ............................................................................................................ 1

II.   ARGUMENT .................................................................................................................... 1

   A.    Transfer Would Moot The Jurisdictional Issues. ................................................. 2

   B.    The *Jones* Factors Strongly Favor Transfer. ...................................................... 3

      1.   Location where the relevant agreements were negotiated and executed ........................... 3

      2.   The state that is most familiar with the governing law ................................. 4

      3.   Plaintiffs' choice of forum ................................................................... 4

      4.   Respective parties' contacts with the forum ........................................... 5

      5.   The contacts relating to the Plaintiffs' cause of action in the chosen forum .................... 6

      6.   Differences in the costs of litigation in the two forums ............................. 7

      7.   The availability of compulsory process to compel attendance of unwilling non-party
           witnesses .......................................................................................... 8

      8.   The ease of access to sources of proof .................................................. 8

III.  CONCLUSION ................................................................................................................ 9

**TABLE OF AUTHORITIES**

Page

1    <u>**CASES**</u>

2    *Allstar Marketing Group, LLC v. Your Store Online, LLC*,
        666 F. Supp. 2d 1109 (C.D. Cal. 2009) ................................................................ 7, 8
3

4    *Carder v. Cont'l Airlines, Inc.*,
        2009 WL 10725727 (S.D. Cal. Sept. 28, 2009) ........................................................ 8, 9

5    *Foster v. Nationwide Mut. Ins. Co.*,
        2007 WL 4410408 (N.D. Cal. Dec. 14, 2007) ........................................................ 8, 9
6

7    *Hoefert v. Am. Airlines, Inc.*,
        2018 WL 2740276 (D. Ariz. June 7, 2018) ........................................................ 4, 6

8    *Inherent.com v. Martindale-Hubbell*,
        420 F. Supp. 2d 1093 (N.D. Cal. 2006) ........................................................ 4
9

10   *Johns v. Panera Bread Co.*,
        2008 WL 2811827 (N.D. Cal. July 21, 2008) ........................................................ 9

11   *Jones v. GNC Franchising, Inc.*,
        211 F.3d 495 (9th Cir. 2000) ........................................................ 1, 7
12

13   *Lou v. Belzberg*,
        834 F.2d 730 (9th Cir. 1987) ........................................................ 4

14   *Park v. Dole Fresh Vegetables, Inc.*,
        964 F. Supp. 2d 1088 (N.D. Cal. 2013) ........................................................ 7
15

16   *Roberts v. CR England, Inc.*,
        827 F. Supp. 2d 1078 (N.D. Cal. 2011) ........................................................ 5, 7

17   *Synopsys, Inc. v. Mentor Graphics Corp.*,
        2013 WL 1365946 (N.D. Cal. Apr. 3, 2013) ........................................................ 4
18

19   *Trevino v. Golden State FC, LLC*,
        2019 WL 6790763 (E.D. Cal. Dec. 12, 2019) ........................................................ 7

20   *Vernon v. Qwest Communications Int'l, Inc.*,
        643 F. Supp. 2d 1256 (W.D. Wash. 2009) ........................................................ 4

21   *Wilson v. Walgreen Co.*,
        2011 WL 4345079 (N.D. Cal. Sept. 14, 2011) ........................................................ 3
22

23

24

25

26

27

28

REPLY IN SUPPORT OF
MOTION TO TRANSFER VENUE
5:24-CV-00530-PCP

1

**I.      INTRODUCTION**

2           Plaintiffs seek to litigate this case in the Northern District of California on behalf of a

3    putative nationwide class, alleging breach of a contract that was drafted and administered in

4    Texas.  Defendant American Airlines, Inc. ("American") moved to transfer this action, in part,

5    because six of the eight named Plaintiffs' claims had no nexus to this jurisdiction and thus would

6    otherwise need to be dismissed for lack of personal jurisdiction.  To avoid transfer, four of those

7    plaintiffs voluntarily dismissed their claims.

8           Now, the remaining Plaintiffs assert that American's arguments for transfer lack merit

9    because there is no longer a jurisdictional defect to be remedied.  Plaintiffs' gambit to avoid

10   transfer fails.  To start, they did not moot the jurisdictional issues that strongly support transfer.

11   Two of the remaining named Plaintiffs, the Gallaghers, bring claims based solely on events that

12   occurred outside of the Northern District of California.  Their claims can be heard in Texas, but

13   they cannot be heard here.  The same is true of absent class members whose claims do not relate

14   to American's contacts with California, including all the former named plaintiffs who voluntarily

15   dismissed their claims.  *See* Opp. 5-6 n.3 (acknowledging potential issues with nationwide class

16   in California).

17          Moreover, regardless of the jurisdictional issues, the majority of the factors under *Jones v.*

18   *GNC Franchising, Inc.,* 211 F.3d 495 (9th Cir. 2000), favor transfer to the Northern District of

19   Texas.  Plaintiffs' single claim involves a contract that was drafted (and allegedly breached) at

20   American's corporate headquarters in Texas and is governed by Texas law.  Texas also serves as

21   a more convenient forum for the potential witnesses in this case—many of whom are located in

22   Texas and subject to the compulsory process there.

23          Accordingly, pursuant to 28 U.S.C. § 1404(a), American respectfully requests that the

24   Court transfer venue to the Northern District of Texas, Fort Worth Division.

25   **II.     ARGUMENT**

26          Plaintiffs do not appear to dispute that this action could have been brought in the Northern

27   District of Texas.  Nor could they.  *See* Mot. 3.  Plaintiffs instead contend that American has

28

REPLY IN SUPPORT OF
MOTION TO TRANSFER VENUE
5:24-CV-00530-PCP

1    failed to demonstrate that transfer is appropriate under Section 1404(a) because: (1) American's

2    "transfer arguments lose all force now that the non-California resident Plaintiffs have been

3    voluntary dismissed"; and (2) each of the non-exhaustive factors in *Jones* is either "neutral or

4    weighs *against* transfer." Opp. 2. Both arguments lack merit.

5            **A.**       **<u>Transfer Would Moot The Jurisdictional Issues.</u>**

6         In its Motion, American explained that Plaintiffs' choice of forum is entitled to little

7    weight because this Court lacked jurisdiction over six of the eight named Plaintiffs' claims. *See*

8    Mot. 4-5. Apparently recognizing this basic jurisdictional defect, the non-California residents

9    voluntarily dismissed their claims three days before Plaintiffs filed their oppositions to

10    American's Motions to Transfer and to Dismiss for Lack of Personal Jurisdiction.[1] *See* Dkt. 23-

11    26. Plaintiffs now argue that because only current California residents remain in the case,

12    American's "transfer arguments lose all force." Opp. 2.

13         To the contrary, American's arguments are made stronger by Plaintiffs' obvious

14    gamesmanship. It is apparent that the former named plaintiffs voluntarily dismissed their claims

15    to facilitate the remaining Plaintiffs' arguments against transfer, with the hope that the dismissed

16    plaintiffs could still benefit from the action as absent class members if there is a class recovery.

17    But the gamesmanship did not even work—there are still jurisdictional defects that can only be

18    resolved by dismissal or transfer. This Court lacks jurisdiction over the Gallaghers' claims,

19    which would not be true of a federal court in Texas. And this Court can moot what will

20    inevitably be a contentious dispute about whether putative absent class members—including the

21    now-dismissed plaintiffs—can participate in a class where the Court would not have jurisdiction

22    over their claims if they sued individually. *See id.* at 5-6 n.3. Far from draining American's

23

---

24    [1] The dismissal of the four non-California residents came just six weeks after they were added to

25    this case. Plaintiffs' initial complaint (filed on January 29, 2024) was brought by the
Nachisons—the only individuals who allege that their accounts were opened and terminated

26    while they resided in California. *See* Dkt. 1. About two weeks later, on February 14, 2024,
Plaintiffs filed an amended complaint naming six additional plaintiffs, Dkt. 14, only to voluntarily

27    dismiss four of them on March 28, 2024 after American filed its motions to dismiss and transfer,
Dkt. 23-26.

28

REPLY IN SUPPORT OF
MOTION TO TRANSFER VENUE
5:24-CV-00530-PCP

1   arguments of "force," the live jurisdictional disputes in this case—and Plaintiffs' transparent but
2   unsuccessful effort to short-circuit them—make a compelling case for transfer.

3       **B.    The *Jones* Factors Strongly Favor Transfer.**

4           Even if there were no jurisdictional issues, this case should be transferred because the
5   majority of the *Jones* factors support transfer.  Plaintiffs' main point in opposition—repeated
6   throughout their brief—seems to be the inconvenience and expense of litigating a case in Texas
7   while residing and working in California.  Plaintiffs' concerns are significantly exaggerated and
8   overlook the realities of litigation.

9           Plaintiffs will only be required to travel to Texas if this case proceeds to trial, which will
10  likely be short.  They can be deposed in California.  And all other aspects of this case that require
11  travel to Texas can be handled by their lawyers.  While their lawyers (two of whom are in
12  Knoxville, and all of whom are from outside this District) might be slightly inconvenienced by
13  traveling to Texas, "[j]udges in this District have repeatedly stated that the location of plaintiff's
14  counsel is not an appropriate factor for the Court to consider when deciding a motion to transfer."
15  *See Wilson v. Walgreen Co*., 2011 WL 4345079, at *5 (N.D. Cal. Sept. 14, 2011).  "Even to the
16  extent the Court considers the convenience of counsel indirectly—i.e., because of the financial
17  burdens on the litigants and their interest in using their established counsel—that does not tip the
18  scales in Plaintiffs' favor.  There is no evidence that Plaintiffs themselves (as opposed to their
19  counsel) will directly incur costs." *Id*. (internal citations omitted).  In short, Plaintiffs' core
20  position is that transfer is unwarranted because they would be inconvenienced by traveling to a
21  hypothetical future trial in Texas about a contract they entered into with a Texas company that
22  was drafted and administered in the company's headquarters in Texas.  That is not a persuasive
23  argument, and the *Jones* factors, considered as a whole, strongly support transfer.

24          **1.    Location where the relevant agreements were negotiated and executed**
25          Plaintiffs contend that this factor is "neutral" because half the contracts were negotiated
26  and breached in this District and half were not.  Opp. 3.  But this factor is not neutral.  While
27  location of negotiation and breach might be a wash, "the location of the drafting may [also] be a

28

consideration," as Plaintiffs admit.  *Id.*  And all the contracts were drafted in Texas—a fact that is particularly relevant to the analysis here, where the parties were not all in the same physical location for the negotiation and execution of the contracts.  *See, e.g., Inherent.com v. Martindale-Hubbell*, 420 F. Supp. 2d 1093, 1102 (N.D. Cal. 2006); *Vernon v. Qwest Communications Int'l, Inc.*, 643 F. Supp. 2d 1256, 1270 (W.D. Wash. 2009).

Plaintiffs contend that American's reliance on *Martindale-Hubbell* is misplaced because "[t]he location where the agreement was drafted was not dispositive, and the court ultimately agreed to transfer largely because 'a pending suit on the same issue' had already been filed in the transferee district."  Opp. 3.  But this overstates American's reliance on that case.  Mot. 3-4.  *Martindale-Hubbell* stands for the more modest proposition that the location of drafting is *a* relevant consideration where the parties were not in the same physical location, a point not even Plaintiffs dispute.  And that consideration favors transfer.

## 2. The state that is most familiar with the governing law

Plaintiffs argue that this Court is capable of applying Texas contract law.  American agrees.  But the second *Jones* factor does not ask whether the transferor court *can* apply the governing law, but instead, which state "*is most familiar* with the governing law."  *Jones* 211 F.3d at 498 (emphasis added); *Synopsys, Inc. v. Mentor Graphics Corp.,* 2013 WL 1365946, at *5 (N.D. Cal. Apr. 3, 2013) (finding that the second *Jones* factor weighed in favor of transfer where "the Oregon court has considerably more familiarity with Oregon contract law, which governs the interpretation of the Settlement Agreement").  Plaintiffs do not meaningfully address American's argument that Texas courts are *most familiar* with Texas contract law.  This factor also weighs in favor of transfer.

## 3. Plaintiffs' choice of forum

This Court should give Plaintiffs' choice of forum less weight because they seek to represent a nationwide class.  *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987); *Hoefert v. Am. Airlines, Inc.*, 2018 WL 2740276, at *2 (D. Ariz. June 7, 2018).  Plaintiffs do not dispute that "deference can be diminished in the context of a class action."  Opp. 5.  Their only dispute is

1    whether the Court calls that diminished deference "minimal" or something else.  But the

2    important point is not semantics.  It is the basic fact that this Court need not defer to Plaintiffs'

3    choice of forum when they purport to represent people from every forum.

4         Plaintiffs argue that courts give less deference in the class context to protect against forum

5    shopping, and then declare that "there are no concerns here that Plaintiffs engaged in forum

6    shopping." Opp. 5.  But that is not true.  Plaintiffs' counsel recruited non-California plaintiffs to

7    join this case and then voluntarily dismissed their claims in an attempt to moot jurisdictional

8    issues that would otherwise favor transfer.  *Supra* at 2.  The gambit failed.  But the argument that

9    this case does not raise potential forum-shopping concerns is not credible.

10        Certainly, this Court need not defer to the Gallaghers' choice of forum.  Their choice

11   should be entitled to *no* deference because they cannot sue here.  Transferring the action to Texas

12   is the only way to save their claims, and would ensure that the court considering class

13   certification can choose among a wider array of putative class representatives.  Mot. 4-5.

14                        **4.    Respective parties' contacts with the forum**

15        Although the remaining named Plaintiffs are current California residents and thus have

16   contacts with this jurisdiction, American's contacts also inform the analysis.  Plaintiffs contend

17   that American has "significant contacts with California" because it is registered to do business in

18   the state, maintains a base located within this district, and advertises its services and AAdvantage

19   program benefits to California residents.  *See* Opp. 6-7.  But American has far greater—and as

20   discussed below, more relevant—contacts with Texas than it does with California.  *See* Mot. 5.

21   This, along with the fact that Plaintiffs seek to represent a nationwide class of individuals who are

22   not all California residents, supports transfer.  *See Roberts v. CR England, Inc.*, 827 F. Supp. 2d

23   1078, 1087 (N.D. Cal. 2011) ("On balance, the fourth factor—the parties' respective contacts

24   with the forum—also favors Utah.  Defendants have greater contacts with Utah, where they are

25   headquartered.  Although Roberts and McKay live in California, they seek to represent a

26   nationwide class of drivers, many of whom may not have had contact with this district, but likely

27   have had contact with Utah.").

28

REPLY IN SUPPORT OF
MOTION TO TRANSFER VENUE
5:24-CV-00530-PCP

1          **5.     The contacts relating to the Plaintiffs' cause of action in the chosen
                     forum**

2

3          The fifth *Jones* factor—the respective parties' contacts *related* to Plaintiffs' claims—also

4   weighs in favor of transferring this case to Texas.  Plaintiffs' claims do not arise from American's

5   base in San Francisco nor from any of American's other purported "contacts" with California.

6   *See Hoefert*, 2018 WL 2740276 at *2-3 (transferring the case where "the Plaintiff argue[d] that

7   the Defendant transacts business in the forum because of its flight operations at Phoenix Sky

8   Harbor International Airport located in Phoenix, Arizona," but "[t]he majority of the events

9   giving rise to this litigation were based in operations and actions that took place in Fort Worth,

10  Texas").[2]  Instead, they arise from an alleged contract that was drafted in Texas and allegedly

11  breached based on decisions made in Texas.  Mot. 6.  Further, two of the four named Plaintiffs

12  were not located in California when they received promotional materials advertising the

13  AAdvantage program, when they created AAdvantage accounts and agreed to the program's

14  terms and conditions, accrued bonus miles through the program, or when their accounts were

15  terminated.  *See* Opp. 3 ("Here, the relevant agreements were executed (and breached) in this

16  District, *as well as Missouri*." (emphasis added)).  Those Plaintiffs—the Gallaghers—have no

17  relevant contacts here.

18         Plaintiffs are also wrong to insist that they (and putative class members) "maintain

19  *absolutely no contacts with Texas*."  *Id*. at 8.  They do have suit-related contacts with Texas—

20  they entered into a contract with a Texas company and the contract was drafted and administered

21  in Texas.  Moreover, Plaintiffs seek to represent a putative class, many of whom will reside in

22

23  ---
    [2] Plaintiffs characterize the facts of *Hoefert* as "distinctly different," arguing that there was a

24  dispute regarding whether the plaintiff still resided in the transferor forum and because the court
    in *Hoefert* determined that it would be more efficient to litigate the case in a forum in which a

25  similar lawsuit was filed and settled.  Opp. 5.  While those were some of the considerations, the
    *Hoefert* court also based its decision upon the finding that the "majority of the events giving rise

26  to th[e] litigation were based in operations and actions that took place in Fort Worth[,]
    [American's] headquarters are located in the Northern District of Texas and … the majority of the

27  witnesses that are likely to be material to this action are also primarily located in the same
    district"—exactly as here.  *Hoefert*, 2018 WL 2740276 at *3.

28

REPLY IN SUPPORT OF
                                                                                                    MOTION TO TRANSFER VENUE
                                                                                                    5:24-CV-00530-PCP

Texas. Thus, Plaintiffs' claim that "putative class members[] maintain *absolutely no contacts with Texas*" is a false statement.

### 6.    Differences in the costs of litigation in the two forums

According to Plaintiffs, because American is a "large corporation and the largest airline in the United States," it can absorb litigation costs better than Plaintiffs. *Id*. at 8-9. Plaintiffs misconstrue the sixth *Jones* factor, which considers "the differences in the costs of litigation in the two forums." *Jones,* 211 F.3d at 498-99. If the only concern were the parties' relative financial resources, corporate defendants would lose every transfer motion. Here, the Northern District of Texas offers the most cost-effective forum because the majority of the witnesses will likely be its former and current employees, most of whom are located there. *See* Mot. 6; *Park v. Dole Fresh Vegetables, Inc.,* 964 F. Supp. 2d 1088, 1095 (N.D. Cal. 2013) ("Generally, litigation costs are reduced when venue is located near the most witnesses expected to testify.").

Plaintiffs focus narrowly on the costs that litigating in Texas would impose on them. Those costs are overstated for the reasons above—namely, Plaintiffs will be required to travel to Texas, if at all, only briefly for trial. *Supra* at 3. And as courts have recognized, in a nationwide class action, a centrally-located forum like Texas can reduce litigation costs. *See Roberts*, 827 F. Supp. 2d at 1087 ("The sixth factor, the costs of litigation, appears to favor transfer" where the named plaintiffs "and certain drivers and witnesses live in California" but "[t]he remaining drivers live in locations throughout the United States. Utah is more centrally located than this district.").

Plaintiffs also suggest that the Court should not consider relative caseloads when evaluating the differences in costs of litigation in two forums. *See* Opp. 9. But as Plaintiffs' cited cases recognize, docket congestion can be a "factor a court may consider when deciding to transfer." *Trevino v. Golden State FC, LLC*, 2019 WL 6790763, at *6 (E.D. Cal. Dec. 12, 2019) (finding that the court's backlog "is *by itself* an insufficient basis upon which to grant a motion to transfer") (emphasis added). And unlike the parties in *Allstar Marketing Group, LLC v. Your Store Online, LLC,* 666 F. Supp. 2d 1109 (C.D. Cal. 2009), American *has* "presented evidence

REPLY IN SUPPORT OF
MOTION TO TRANSFER VENUE
5:24-CV-00530-PCP

1    regarding the relative congestion of court dockets," *id*. at 1134, which shows that the Northern

2    District of California has a significantly higher caseload, with significantly longer times to trial,

3    than the Northern District of Texas does, *see* Mot. 7.  This practical consideration should inform

4    the Court's analysis.

5                    **7.    The availability of compulsory process to compel attendance of**
                             **unwilling non-party witnesses**
6

7            Because Plaintiffs concede that many non-party witnesses in this case would be subject to

8    the compulsory process in the Northern District of Texas but not here, Plaintiffs attempt to

9    downplay the importance of their testimony.  Plaintiffs contend that "former employees'

10   testimony will not be necessary to litigate Plaintiffs' claims" because documentary evidence and

11   testimony from current American employees should be sufficient.  Opp. 10-11.  But that is not

12   their call to make.  Especially at this early juncture, Plaintiffs do not get to decide which

13   witnesses will be important or necessary, particularly where American has emphasized that its

14   former employees who made decisions to terminate Plaintiffs' AAdvantage accounts will have

15   relevant testimony and reside in the Northern District of Texas.  *See* Mot. 8.[3]  Plaintiffs also

16   ignore the putative class members they seek to represent, who may become witnesses in this

17   action.  *See Carder v. Cont'l Airlines, Inc.*, 2009 WL 10725727, at *2 (S.D. Cal. Sept. 28, 2009);

18   *cf. Foster v. Nationwide Mut. Ins. Co*., 2007 WL 4410408, at *3-5 (N.D. Cal. Dec. 14, 2007).

19   And even if American's corporate witnesses or putative class members could be compelled to

20   testify in this Court, the Northern District of Texas would be a more convenient forum for the

21   witnesses given its central location.

22                          **8.    The ease of access to sources of proof**

23           As Plaintiffs themselves recognize, Opp. 10-11, documentary evidence will be important

24   in this case.  And the majority of the key documents will be located at American's headquarters in

25   Fort Worth, Texas—where the AAdvantage program was created, implemented, and

26   ───────────────
     [3] Plaintiffs speculate that these former employees have moved out of the Northern District of
27   Texas, Opp. 10, but that is nothing more than conjecture that does not cast doubt on the evidence
     submitted by American.
28

REPLY IN SUPPORT OF
                                                      MOTION TO TRANSFER VENUE
                                                      5:24-CV-00530-PCP

1  administered.  This is a relevant consideration even though many of those documents may be

2  available electronically, because "litigation should proceed where the case finds its center of

3  gravity."  *Johns v. Panera Bread Co.*, 2008 WL 2811827, at *4-5 (N.D. Cal. July 21, 2008)

4  (internal citation omitted); *see also Foster*, 2007 WL 4410408, at *6 (noting that "while

5  developments in electronic conveyance have reduced the cost of document transfer somewhat, the

6  cost of litigation will be substantially lessened if the action is venued in the same district where

7  most of the documentary evidence is found" (internal citation omitted)).[4]  Accordingly, this factor

8  also weighs in favor of a transfer here.

9  **III.**   **CONCLUSION**

10        For these reasons and those set forth in its opening brief, American requests that the Court

11  grant its Motion to Transfer Venue under 28 U.S.C. § 1404(a).

12        Dated:  April 15, 2024                    JASON ZARROW
                                                    O'MELVENY & MYERS LLP
13

14

15                                         By:   */s/ Jason Zarrow*
                                                      Jason Zarrow
16                                              Attorneys for Defendant
                                                American Airlines, Inc.
17

18

19

20

21

---

22  [4] The court in *Carder*, 2009 WL 10725727, found that the location of documentary evidence was
23  relevant to this inquiry although much of it was available in electronic format and "[could] be
     easily transferred to another forum."  *Id*. at *3.  Plaintiffs attempt to distinguish *Carder* by
24  arguing that the court there determined that this factor weighed in favor of transfer because
     physical evidence was located in the transferee forum.  *See* Opp. 12-13.  That is a
25  mischaracterization.  The court in *Carder* determined that the forum in which the corporate
     defendant's headquarters was located provided easier access to evidence because "*much of the
26  documentary evidence and some physical evidence*" was located at defendant's headquarters.
     *Carder*, 2009 WL 10725727 at *3 (emphasis added).  As in *Carder*, the location of potential
27  documentary evidence here is relevant, even if that documentary evidence is available
28  electronically.