UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ARI NACHISON, et al.,

           Plaintiffs,

    v.

AMERICAN AIRLINES, INC.,

           Defendant.

Case No. 24-cv-00530-PCP

**ORDER DENYING MOTION TO TRANSFER VENUE**

Re: Dkt. No. 20

In this putative nationwide class action, the named plaintiffs allege that defendant American Airlines, Inc. ("AA") wrongfully and unilaterally terminated their AAdvantage program accounts resulting in the total loss of plaintiffs' accrued airline miles. AA moves to transfer the plaintiffs' lawsuit to the Northern District of Texas. For the following reasons, AA's motion is denied.

**BACKGROUND**

AAdvantage is a frequent flyer reward program offered by AA where members can earn "miles" that are redeemable for program benefits associated with air travel, such as purchasing and upgrading flights or renting cars and hotels. Miles may be obtained through various methods including direct purchases from AA or booking flights through AA. AAdvantage members may also earn miles by obtaining and using AA-branded credit cards issued by Citibank or Barclays. The contracts governing AAdvantage accounts and promotional materials are drafted and administered at AA's headquarters in Texas.

This lawsuit involves AAdvantage members who applied for and used multiple Citi-AAdvantage and Barclays-AAdvantage credit cards after receiving promotional materials from AA. According to plaintiffs, some Citi-AAdvantage credit card applications included "Offer

United States District Court
Northern District of California

1    Availability" restrictions limiting enrollment bonuses to customers who hadn't received an

2    enrollment bonus in the last 48 months, while others (including those that plaintiffs purportedly

3    filled out) did not. The plaintiffs allege that the "Offer Availability" section in their applications

4    included no restriction on the number of credit cards customers could apply for or receive.

5          The plaintiffs further allege that AA terminated their AAdvantage accounts after

6    concluding that they had engaged in fraud or improper conduct by taking advantage of multiple

7    Citi-AAdvantage or Barclays-AAdvantage credit card promotions. They each received emails

8    notifying them that their AAdvantage accounts had been terminated due to "violations of the

9    General AAdvantage Program Conditions" "related to the accrual of ineligible miles and benefits;

10   through fraud, misrepresentation, and/or abuse of the AAdvantage Program." Dkt. No. 14, at 16.

11   The plaintiffs contend that customers whose AAdvantage accounts were terminated lost all miles

12   accrued to that point and any tickets they had purchased but not yet used were cancelled.

13         On the basis of these allegations, the plaintiffs assert claims for breach of contract and

14   unjust enrichment and seek to represent a nationwide class. The original complaint included eight

15   plaintiffs: four residing in California, two in Michigan, and two in Connecticut.

16         On March 4, 2024, AA moved to dismiss for lack of personal jurisdiction the claims

17   brought by six of the eight plaintiffs: the four who resided outside California at all times relevant

18   to their claims and the two who are currently California residents but who resided elsewhere when

19   their AAdvantage accounts were created and terminated. On March 6, 2024, AA moved under 28

20   U.S.C. § 1404(a) to transfer venue from this Court to the Northern District of Texas.

21         On March 28, 2024, the four plaintiffs residing outside of California voluntarily dismissed

22   their claims without prejudice under Federal Rule of Civil Procedure Rule 41(a). On May 2, 2024,

23   the Court heard AA's motions to dismiss and transfer. The Court orally granted AA's motion to

24   dismiss the claims brought by the two plaintiffs who did not reside in California when their

25   accounts were created and terminated, leaving only two plaintiffs in the case, the Nachisons. On

26   the same date, the court heard and submitted AA's motion to transfer. Dkt. No. 40.

27

28

United States District Court
Northern District of California

1

**LEGAL STANDARDS**

2      Under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest

3  of justice, a district court may transfer any civil action to any other district or division where it

4  might have been brought or to any district or division to which all parties have consented." A

5  party seeking to transfer a case bears the burden of demonstrating that the convenience and

6  interest of justice factors "clearly favor transfer." *Lax v. Toyota Motor Corp.*, 65 F. Supp. 3d 772,

7  781 (N.D. Cal. 2014).

8      A "motion to transfer venue under § 1404(a) requires the court to weigh multiple factors in

9  its determination whether transfer is appropriate in a particular case." *Jones v. GNC Franchising,*

10  *Inc.*, 211 F.3d 495, 498 (9th Cir. 2000). The Ninth Circuit has identified several factors to guide

11  that inquiry: "(1) the location where the relevant agreements were negotiated and executed, (2) the

12  state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the

13  respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of

14  action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the

15  availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8)

16  the ease of access to sources of proof." *Id.* at 498–99. District courts retain "broad discretion to

17  adjudicate motions for transfer on a case-by-case basis" and no individual factor is dispositive.

18  *Ctr. For Biological Diversity & Kempthorne*, 2008 WL 4543043, at *2 (N.D. Cal. Oct. 10, 2008).

19  Transfer is not appropriate if it "merely shift[s] rather than eliminate[s] the inconvenience."

20  *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986).

21

**ANALYSIS**

22  I.      **The Action Could Have Been Brought in the Northern District of Texas.**

23      As an initial matter, transfer is available only if this action could have been brought in the

24  district to which AA seeks transfer. An action "might have been brought" in any court that would

25  have subject matter jurisdiction over the claims and personal jurisdiction over the defendant, and

26  where venue would be proper. *See Doe v. Epic Games, Inc.*, 435 F. Supp. 3d 1024, 1040 (N.D.

27  Cal. 2020). Applying this test, it is clear that this action could have been brought in the Northern

28  District of Texas.

1       First, the Northern District of Texas would have subject matter jurisdiction over this matter

2   for the same reasons this Court has jurisdiction. Pursuant to the Class Action Fairness Act, the

3   aggregated claims of the individual class members exceed the sum or value of $5,000,000,

4   exclusive of interest and costs; there are more that 100 putative class members; and at least one

5   putative class member is a citizen of a different state than AA. *See* 28 U.S.C. § 1332(d).

6       Second, the Northern District of Texas could exercise general personal jurisdiction over

7   AA. "With respect to a corporation, the place of incorporation and principal place of business are

8   'paradig[m] ... bases for general jurisdiction.'" *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014)

9   (citation omitted). It is undisputed that AA's principal place of business is Fort Worth, Texas,

10  which is located in the Northern District of Texas. Dkt. No. 14, at 3.

11      Third, venue would be proper in the Northern District of Texas. Venue is proper in "a

12  judicial district in which any defendant resides, if all defendants are residents of the State in which

13  the district is located," 28 U.S.C. § 1391(b)(1), or in "a judicial district in which a substantial part

14  of the events or omissions giving rise to the claim occurred," 28 U.S.C. § 1391(b)(2). For purposes

15  of venue in a state with more than one judicial district, a corporation "shall be deemed to reside in

16  any district in that State within which its contacts would be sufficient to subject it to personal

17  jurisdiction if that district were a separate State." 28 U.S.C. § 1391(d). Because the sole defendant

18  in this case (AA) resides in Fort Worth, Texas, in the Northern District of Texas, venue would be

19  proper in the Northern District of Texas.

20  **II.     On Balance, the *Jones* Factors Weigh Against Venue Transfer.**

21      Even if an action could have been brought in a different district, transfer under 28 U.S.C. §

22  1404(a) is appropriate only if it would promote convenience and the interests of justice, as

23  determined by evaluating several factors: "(1) the location where the relevant agreements were

24  negotiated and executed, (2) the state that is most familiar with the governing law, (3) the

25  plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts

26  relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of

27  litigation in the two forums, (7) the availability of compulsory process to compel attendance of

28  unwilling non-party witnesses, and (8) the ease of access to sources of proof." *Jones*, 211 F.3d at

*United States District Court*
*Northern District of California*

4

1   498–99. On balance, these factors do not clearly favor transferring this matter to the Northern

2   District of Texas.

3     AA contends that the first factor favors transfer because the Nachisons' AAdvantage

4   agreements were drafted in Texas at AA's principal place of business. Crucially, however, they

5   were executed by the Nachisons in California and allegedly breached by AA in California. As a

6   result, the first factor is neutral. *See Silk v. Bond*, 2024 WL 869469, at \*4 (C.D. Cal. Feb. 29,

7   2024) (finding that where "the parties negotiated and executed all [] agreements in [multiple

8   states]," the first factor "weighs neutral").

9     AA contends that the second factor favors transfer because the relevant agreements contain

10   a Texas choice-of-law provision. Although a federal court sitting in Texas might have somewhat

11   more familiarity with Texas law, this court is fully capable of applying Texas law (should it

12   ultimately govern the parties' dispute), particularly given that there appears to be no meaningful

13   differences between the elements of a breach of contract claim under Texas and California law.

14   *Compare Buschman v. Anesthesia Bus. Consultants LLC*, 42 F. Supp. 3d 1244, 1250 (N.D. Cal.

15   2014) ("The elements for a breach of contract action under California law are: (1) the existence of

16   a contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and

17   (4) damages to plaintiff as a result of the breach.") *with Tyler v. Citi-Residential Lending Inc.*, 812

18   F. Supp. 2d 784, 787 (N.D. Tex. 2011) ("Under Texas law, the essential elements of a breach of

19   contract action are: (1) the existence of a valid contract; (2) performance or tendered performance

20   by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the

21   plaintiff as a result of the breach.") (internal quotation marks and brackets omitted). As a result,

22   the second factor only slightly favors transfer.

23     Third, the Nachisons' choice of a California forum weighs against transfer. Although less

24   deference is given to a plaintiff's choice of forum in the context of class actions, this primarily

25   "serves as a guard against the dangers of forum shopping, especially when a representative

26   plaintiff does not reside within the district." *Roling v. E\*Trade Securities, LLC*, 756 F. Supp. 2d

27   1179, 1185 (N.D. Cal. 2010). Here, the Nachisons are California residents whose AAdvantage

28

United States District Court
Northern District of California

1    contracts were executed and terminated in California. That California residents who suffered harm

2    in California would choose to bring suit in California is not indicative of forum shopping.

3         Fourth, the respective parties' extensive contacts with California also weigh against

4    transfer. AA is registered to do business in California and engaged in substantial business therein

5    during all times relevant to this case. AA maintained a base at San Francisco International Airport

6    and advertised its services and offered AAdvantage program benefits to California residents. Dkt.

7    No. 28, at 10. The Nachisons' contacts with California are similarly extensive, as they purchased

8    AA flights while living in California, utilized AA flights to travel to and from California, and

9    accrued AAdvantage bonus miles which were used to buy additional flights travelling to and from

10   California. *Id.* Further, the Nachisons received and took advantage of promotional materials

11   mailed by AA to their California home address, and their accounts were subsequently terminated

12   while they were in California. *Id.* at 10–11. Conversely, the Nachisons have minimal contacts with

13   Texas. *See Shultz v. Hyatt Vacation Mktg. Corp.*, 2011 WL 768735, at *4 (N.D. Cal. Feb. 28,

14   2011) (finding that "this factor weighs against transfer" where "both parties have extensive

15   contacts" with the current district, regardless of how much "more extensive" the defendant's

16   contacts with a proposed transferee court were). Because both parties have extensive contacts with

17   this forum while the Nachisons have minimal contacts with Texas, the fourth factor weighs against

18   transfer.

19        For the same reasons, the parties' contacts with this forum relating to the plaintiffs' cause

20   of action weigh against transfer. As discussed, the Nachisons' AAdvantage accounts were created

21   and terminated in California, and AA voluntarily marketed to and did business with the Nachisons

22   and other AAdvantage customers in California. The parties therefore have extensive contacts with

23   the Northern District of California that relate directly to the claims in this lawsuit.

24        With respect to the sixth factor, AA has not shown that litigating this case in the Northern

25   District of Texas would be substantially less costly than litigating it here. To be certain, AA will

26   likely incur more costs litigating this matter in the Northern District of California rather than the

27   Northern District of Texas, while the Nachisons will incur additional costs if this matter is

28

United States District Court
Northern District of California

transferred.[1] But "transfer is not appropriate if it simply shifts the inconvenience from one party to another." *Shultz*, 2011 WL 768735, at *6; *see also Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986). Indeed, as a corporation and the largest airline in the United States, AA is better suited to absorb any additional costs resulting from litigation in the Northern District of California rather than the Northern District of Texas. *Shultz*, 2011 WL 768735, at *6 ("[W]hile Hyatt's expenses will likely be greater overall than Plaintiff's if the case is not transferred to Florida, the Court finds that Hyatt's ability to bear these expenses tempers the importance of the expenses' relative size."). The sixth factor is thus neutral.

AA contends that the seventh factor favors transfer because certain former AA employees who were involved with the termination of the Nachisons' AAdvantage accounts can be compelled to testify only in the Northern District of Texas. It is unclear, however, why such testimony would be needed, given that the Nachisons' claim would seem to turn upon whether the Nachisons' conduct provided a valid basis for the termination of their accounts under the contractual terms of the Nachisons' AAdvantage agreement. And even if such testimony is required, it is unclear why it cannot be procured through a Rule 30(b)(6) deposition of AA or depositions of current AA employees. The seventh factor is therefore neutral or only very slightly favors transfer.

Finally, AA contends that the eighth factor favors transfer because its records are located in the Northern District of Texas. "[I]n the age of electronically stored information," however, "the ease of access to evidence is [generally] neutral because much of the evidence in this case will be electronic documents, which are relatively easy to obtain in any district." *Simpson Strong-Tie Co., Inc. v. Oz-Post Intl., LLC*, 2018 WL 3956430, at *8 (N.D. Cal. Aug. 17, 2018) (internal citations omitted). AA has not explained why any relevant non-electronic records it maintains in Texas cannot be converted to digital form in Texas prior to their production to the plaintiffs or use

---

[1] AA contends that transfer will impose limited or no costs on the Nachisons because their attorneys reside outside the Northern District of California and the Nachisons need not attend pre-trial court proceedings personally. As putative class representatives, however, the Nachisons have duties to absent class members that are often best served through in-person attendance at court proceedings. Rather than discounting or discouraging such attendance, courts appropriately encourage putative class representatives' active, in-person participation in all aspects of their case.

1    in court proceedings, as is done in almost all modern civil litigation. Because AA has not

2    identified anything unusual about the evidence that will be used in this lawsuit and the parties'

3    access thereto that would make litigation in the Northern District of Texas substantially less

4    difficult, the eighth factor is also neutral.

5          Ultimately, AA has identified at most two *Jones* factors that favor transfer, and they do so

6    only ever so slightly. Given that the other factors are either neutral or more strongly weigh against

7    transfer, AA has not satisfied its burden to demonstrate that convenience and the interests of

8    justice clearly favor transferring this matter to the Northern District of Texas.

9                                      **CONCLUSION**

10         For the foregoing reasons, American Airlines' motion to transfer venue is denied.

11

12         **IT IS SO ORDERED.**

13   Dated: June 24, 2024

14

15   _____

16   P. Casey Pitts
     United States District Judge

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California